NADINE JACOBY and ROBERT JACOBY, Plaintiffs-Appellants, *v.* KAISER FOUNDATION HOSPITAL, KAISER HEALTH PLAN, INC., HAWAII PERMANENTE MEDICAL GROUP, INC., JOHN DOES 1 THROUGH 100, DOE PARTNERSHIPS 1 THROUGH 50, DOE CORPORATIONS 1 THROUGH 50, and DOE BUSINESS ASSOCIATIONS 1 THROUGH 50, Defendants-Appellees

NO. 6814

JANUARY 7, 1981

HAYASHI, C.J., BURNS, J., AND CIRCUIT
JUDGE GREIG IN PLACE OF
ASSOCIATE JUDGE PADGETT, DISQUALIFIED

OPINION OF THE COURT BY BURNS, J.

Plaintiffs-Appellants Nadine Jacoby (Nadine) and Robert Jacoby (Robert) appeal from the summary judgment entered against them on their tort claim.

The issue is whether the lower court erred when it concluded, as a matter of law, that plaintiffs discovered, or through the use of reasonable diligence should have discovered, the alleged malpractice, on or before May 26, 1974. We hold that the lower court erred.

Nadine became a member of the Kaiser Health Plan in November 1968. In October 1971, Kaiser gave her an arteriogram. In September 1972, Kaiser grafted arteries in her right inguinal (groin) area. Alleging that she continued to suffer pain and discomfort, she continued to seek Kaiser's medical assistance. At some point Kaiser advised her that her problem was not of a strictly medical and surgical nature but rather was the product of mental stress and her medication and reaction thereto.

On March 12, 1974, she was brought by ambulance to Kaiser where their physicians refused to examine or treat her and ordered that she be removed. Thereafter, she obtained care and treatment, including surgery, from other physicians.

On March 23, 1974, she was examined by Dr. Albert Chun Hoon and his written report of the examination states, *inter alia:* "Etiology uncertain, possible on the basis of vascular problem or previous vascular surgery."

On April 30, 1974, she consulted a law firm. At some point "subsequent to March, 1974", she contacted the Peer Review Committee of the Honolulu Medical Society.

By letter dated January 17, 1975, "RE: Possible Malpractice Action", her attorney advised her that "this office does not wish to bring a lawsuit on your behalf in this matter" and of the existence of a statute of limitations which "indicates that you have two years from the date of your discovery of, or from when you should have discovered the improper care rendered you by the doctor or doctors in question".

In April 1975, Nadine was interviewed by the *Maui News* and the resulting article stated:

What about the patient's point of view in the malpractice suit controversy, asks Mrs. Nadine Jacoby of Napilihau.

After seeing points of view expressed in the pages of the Maui News by a doctor and an attorney, she feels there is still a third side to be told.

She said she has asked for a settlement through a clinic's insurance company, but because there is a statute of limitations of two years on malpractice suits, if they won't deal with her soon, she will be "forced to sue."

\* \* \* \* \*

She says that for "almost two years I've been trying to settle a claim out of court through their review board. It seems to work in California, but not here."

\* \* \* \* \*

"But, they didn't take the proper tests. Because I didn't receive the proper care for two years, I have my present problem."

She says her present doctors claim she previously received "substandard medical treatment."

By letter dated March 9, 1976, the Chairman of the Peer Review Committee advised Nadine that it "could find no evidence of physician incompetence or negligence during the time you were under the care of the Kaiser Medical Center in Honolulu".

By letter dated July 13, 1976, the Chairman of the Peer Review Committee advised her that in its opinion the care she

received by Kaiser's Maui physicians "met the standards of care in the community".

Plaintiffs filed their complaint on May 27, 1976.

On June 16, 1977, Kaiser filed a motion for summary judgment, alleging that plaintiffs' complaint was barred by HRS § 657-7.3.[1] The court granted the motion with respect to the malpractice claim but allowed plaintiffs to pursue their claim for breach of contract for Kaiser's failure to treat Nadine pursuant to their health plan contract.

The general issue is whether, as a matter of law, plaintiffs' malpractice claims are barred by the applicable statute of limitations. The specific issue is when the statutory period began to run. The claims relate primarily to the surgery in September 1972, but they involve the period from the arteriogram in October 1971 to the refusal to treat on March 12, 1974. We thus must contend with the possibility that the two years ran as to some portion of the care and treatment but not as to other portions because plaintiffs had or should have had the requisite knowledge as to some portions of it but not as to all of it.

Prior to Act 92, Session Laws of Hawaii 1973, (HRS § 657-7.3), the applicable statute of limitations was contained in Revised Laws of Hawaii (RLH) 55, section 241-7. The time specified in RLH 55, section 241-7, was "two years after the cause of action accrued". Prior to November 3, 1967, the two

---

[1]
§657-7.3 Medical torts; limitation of actions; time. No action for injury or death against a physician or surgeon, . . . duly licensed or registered under the laws of the State, or a licensed hospital as the employer of any such person, based upon such person's alleged, professional negligence, . . . shall be brought more than two years after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, but in any event not more than six years after the date of the alleged act or omission causing the injury or death. This six year time limitation shall be tolled for any period during which the person has failed to disclose any act, error, or omission upon which the action is based and which is known to him.* [L 1973, c 92, § 1; am L 1976, c 219, § 17; am L 1977, c 167, § 14]

---

* Prior to the 1977 enactment, here appeared the words "or as provided in section 671-18.". L 1977, c 167, omitted this material without setting it out in brackets.

years "commenced running at the time of the suffering of damage from the treatment, and was not deferred until the discovery of the fault in the diagnosis". *Yoshizaki v. Hilo Hospital*, 50 Haw. 1, 4, 427 P.2d 845, 847 (1967) (*Yoshizaki I*, May 1, 1967). However, *Yoshizaki v. Hilo Hospital*, 50 Haw. 150, 433 P.2d 220 (1967) (*Yoshizaki II*, November 3, 1967), held that "the statute does not begin to run until the plaintiff knew or should have known of the defendant's negligence". *Yoshizaki II*, 50 Haw. at 154, 433 P.2d at 223. From and after May 15, 1973, the applicable statute of limitations was contained in HRS § 657-7.3. The time specified in HRS § 657-7.3 is "two years after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, but in any event not more than six years after the date of the alleged act or omission causing the injury or death".

*Yoshizaki II*, (effective November 3, 1967), ran the statute from the discovery of the "negligence". HRS § 657-7.3, (effective May 15, 1973), runs the statute from the discovery of the "injury". Legislative history concerning HRS § 657-7.3 indicates no significant difference between the two words.

> [M]any times it would be impossible for the injured person to discover the alleged malpractice until some time after the usual two year statute of limitations. This being so, until he discovers that a wrong has been committed against him, he should not be held to the same strict tort statute of limitations.

SC Rep. No. 455, 1973 HOUSE JOURNAL at 947; SC Rep. No. 665, 1973 SENATE JOURNAL at 907. Thus we hold that the applicable rule under *Yoshizaki II* is the same as the rule under HRS § 657-7.3 and that one rule applies to the entire time period involved in this case.

In California, the applicable statute runs "after the accrual of the cause of action". This statute has been interpreted to mean that:

> In a suit for malpractice the statute of limitations commences to run when the plaintiff discovers the injury and its negligent cause or through the exercise of reasonable diligence should have discovered it.

*Wozniak v. Peninsula Hospital,* 1 Cal. App.3d 716, 722, 82 Cal. Rptr. 84 (1969).[2]

Thus, in California, the time does not begin to run until the plaintiff discovers (1) the damage; (2) the cause; and (3) the fact that the cause is negligent.

The Federal Tort Claims Act's (FTCA) statute of limitations runs "after such claim accrues". USCA Title 28, § 2401(b). The United States Supreme Court interprets the FTCA's language differently than the California Supreme Court interprets the similar language of its statute.

> We thus cannot hold that Congress intended that "accrual" of a claim must await awareness by the plaintiff that his injury was negligently inflicted. A plaintiff such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.*** But however or even whether he is advised, the putative malpractice plaintiff must determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make. If he fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury.

*U. S. v. Kubrick,* 444 US 111, 123-124, 62 L.Ed. 2d 259, 270-71, 100 S.Ct. 352, 360 (1979).

---

[2] California's *Wozniak* rule could be more clearly stated. Not only does the plaintiff have to discover the injury and the cause, but also that the cause violated the applicable duty of care, *i.e.*, that the cause was negligent.

Thus, the FTCA's time runs when a plaintiff discovers (1) the cause and (2) the damage. Plaintiff must discover the fact that the cause is negligent while the clock is running.

There are two differences between HRS § 657-7.3 and the FTCA which cause us to reject *Kubrick's* interpretation.

First, in *Kubrick*, one of the major difficulties Justice White had with the California interpretation was that:

[T]he plaintiff in such cases need not initiate a prompt inquiry and would be free to sue at any time within two years from the time he receives or perhaps forms for himself a reasonable opinion that he has been wronged. In this case, for example, *Kubrick* would have been free to sue if Dr. Soma had not told him until 1975, or even 1980, instead of 1972, that the neomycin treatment had been a negligent act.

*Kubrick, supra,* 62 L.Ed. 2d at 267.

We do not have this problem in Hawaii. HRS § 657-7.3 limits "the time within which the action may be initiated to six years after the date of the operation or two years after the injured person discovers the injury, whichever occurs sooner". 1973 HOUSE JOURNAL at 947; 1973 SENATE JOURNAL at 907.

Second, we think the "through the use of reasonable diligence should have discovered" language in our statute adequately covers and includes the duty of reasonably diligent inquiry which Justice White talked about in *Kubrick*.

Therefore, in interpreting our statute, we reject the FTCA rule and adopt, with clarification, the California rule.

We conclude that in the context of this kind of case injury is legal injury is legal wrong is malpractice is cause of action is negligence.

Thus, we hold that HRS § 657-7.3's two-year limitation commences to run when plaintiff discovers, or through the use of reasonable diligence should have discovered, (1) the damage; (2) the violation of the duty; and (3) the causal connection between the violation of the duty and the damage.

Therefore, the precise issue of fact for determination in this case is when Nadine and Robert discovered or should

have discovered all three of the items, recognizing that they each may have discovered or possibly should have discovered each item at different times.

However, since the complaint was filed on May 27, 1976, for purposes of reviewing the validity of the summary judgment issued by the lower court we decide only whether the record indicates that Nadine and Robert discovered or should have discovered all three items on or before May 26, 1974.

The record[3] indicates the following facts during or relevant to the period after March 12, 1974 and on or before May 27, 1974: Nadine consulted and received treatment from other physicians; she consulted counsel (on April 30, 1974); she ("subsequent to March, 1974,") contacted the Peer Review Committee of the Honolulu Medical Society; she (sometime in April 1975) told a reporter from the *Maui News* that "she had been trying to settle the claim out of court for almost two years and that she specifically complained that the Kaiser facilities had not cared for her".

Nadine, by affidavit, stated that her contacts with counsel and the Peer Review Committee involved her claim that Kaiser had breached its contract to provide health care to her by willfully abandoning her as a patient and:

> That she did not become aware that her condition and the ailments complained of while undergoing treatment at Kaiser hospitals were directly related to the treatment she had received from defendants until April, 1976, when she was advised by a physician that the nature of the medical and surgical treatment performed by defendants may have fallen below the standard of care exercised by physicians in the community.

Record at 183.

Thus, under oath Nadine states that she did not discover the violation of the duty and the causal connection between the violation of the duty and the damage until April 1976.

---

[3] This is another case involving non-compliance with HRCP, rule 56(e). *See DeMund v. Lum*, 1 Haw. App. 443, 620 P.2d 270 (1980); and *Pacific Concrete FCU v. Kauanoe*, 62 Haw. 334, 614 P.2d 936 (1980). However, in view of our decision, we do not reach the issue created by the violation of the rule.

Concerning Robert, the record contains little information upon which to base a conclusion about what he discovered or should have discovered or when such events took place if ever.

On the other side, Kaiser contends that the facts on record prove that plaintiffs discovered all three items on or before May 27, 1974 or that through the use of reasonable diligence should have discovered them.

> It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.

*State v. Zimring,* 52 Haw. 472, 475, 479 P.2d 202, 204 (1970) (quoting *Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Co.,* 381 F.2d 245 (4th Cir. 1967)).

In our view, although there is evidence on the record to contradict Nadine's claim of non-discovery of the requisite information, we are unable at this point to say that Nadine cannot prevail under any circumstances.

Concerning the claim that she actually discovered all three items, the issue is one of credibility. That issue is for the trier of fact.

> [F]acts asserted by the party opposing the motion, if supported by affidavits or other evidentiary material, are regarded as true.
>
> Inasmuch as the movant carried the burden of persuading the court that his statement of fact is accurate, if his evidentiary material creates an issue of credibility, . . . the case must go to trial unless it also appears that the party opposing the motion cannot prevail in any event and that the issue of credibility therefore is immaterial.

(Footnotes omitted.) 10 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil § 2727 at 526-531.

Concerning the claim that she, through the use of reasonable diligence, should have discovered all three items, that issue is also for the trier of fact.

It bears repeating, however, that even when there is

no dispute as to the facts, it usually is for the jury to decide whether the conduct in question meets the reasonable man standard;. . . ."

*Id.* at § 2729.

When there has been a belated discovery of the cause of action, the issue whether the plaintiff exercised reasonable diligence is a question of fact for the court or jury to decide. The drastic remedy of summary judgment may not be granted unless reasonable minds can draw only one conclusion from the evidence.

*Enfield v. Hunt*, 154 Cal. Rptr. 146, 147, 91 Cal. App. 3d 417, 419 (1979).

Therefore, this case is reversed and remanded for further proceedings consistent with this opinion.

*Daniel U. Smith (Melvin Belli* and *Robert B. Ingram, Belli & Choulos*, San Francisco, Cal., on the briefs); and *Gervase M. Flick (Robert W. Jinks* on the briefs) for plaintiffs-appellants.

*Donald A. Beck (Jeffrey S. Portnoy* with him on the brief; *Cades, Schutte, Fleming & Wright)* for defendants-appellees.