**Louise ANDERSON, Plaintiff and Appellant,**

v.

**Lester D. SHOOK, and Radiologists, Ltd., Defendants and Appellees.**

**Civ. No. 10327.**

Supreme Court of North Dakota.

April 25, 1983.

Robins, Zelle, Larson & Kaplan, St. Paul, Minn., and Wegner, Fraase, Nordeng & Johnson, Fargo, for plaintiff and appellant; argued by Terry L. Wade, St. Paul.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendants and appellees; argued by Jane C. Heinley, Fargo.

PEDERSON, Justice.

This is an appeal from the order granting Dr. Lester D. Shook and Radiologists, Ltd. summary judgment under Rule 56, NDRCivP, dismissing Louise Anderson's complaint against them based upon the running of the statute of limitations. We reverse and remand.

In 1975 Anderson, who had been diagnosed as having cancer of the uterus, was referred to the Dakota Hospital in Fargo by physicians in Colorado. Dr. Blaine Amidon treated Anderson internally with radium and then referred her to Dr. Shook, an employee of Radiologists, Ltd., for external radiation therapy. Dr. Shook treated Anderson during September and October of 1975. In September 1981 Anderson brought actions against Dr. Shook and Radiologists, Ltd., alleging that the radiation therapy was negligently administered resulting in permanent injury. The only issue before the trial court was whether or not the statute of limitations barred the action.

The North Dakota statute of limitations for malpractice provides in relevant part:

"The following actions must be commenced within two years after the cause of action has accrued:

. . . . .

3. An action for the recovery of damages resulting from malpractice; pro-

vided, however, that the limitation of an action against a physician or licensed hospital will not be extended beyond six years of the act or omission of alleged malpractice by a nondiscovery thereof . . . ."

Section 28–01–18, NDCC.

This statute establishes a two-year limitation period for malpractice claims beginning at the time the cause of action accrues. After six years from the act or omission of alleged malpractice, all claims are barred except those undiscovered because of fraudulent conduct by the physician or hospital and those involving infants, the insane, and prisoners. See §§ 28–01–18 and 28–01–25, NDCC.

The trial court granted Dr. Shook's motion for dismissal based upon this statute. It adopted the rationale of *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), and held the two-year statute of limitations accrues or begins to run when a plaintiff knows or should suspect that she has been injured and knows the cause of that injury. The parties agree that Anderson knew of the existence of her injury and knew that it resulted from radiation therapy by July 1976. Because of this fact and its interpretation of the two-year statute, the trial court determined that the cause of action which Anderson brought in 1981 was barred.

Anderson argues that the statute of limitation accrues at the time the plaintiff discovers, or by reasonable diligence could discover, that she has been injured, that the injury was caused by the treatment received, *and* that it was reasonably probable that the treatment was negligent. Anderson alleges that not until 1980 did she discover that Dr. Shook's treatment may have been negligent. Therefore, she contends she began the action within two years after it accrued and before the expiration of six years from the act of alleged malpractice.

The legal issue before this court concerns the knowledge required by a plaintiff in a medical malpractice case which will cause an action to "accrue." Section 28–01–18(3),

NDCC, does not specify the occurrence that marks the accrual of a malpractice action. See *Hubbard v. Libi,* 229 N.W.2d 82, 83 (N.D.1975). In *Iverson v. Lancaster,* 158 N.W.2d 507, 510 (N.D.1968), we determined the "discovery rule" was applicable to malpractice actions and stated that "the limitation period commences to run against a malpractice action from the time the act of malpractice with resulting injury is, or by reasonable diligence could be, discovered." The facts before us today mandate that we go one step further.

The North Dakota malpractice statute states that "the limitation of an action will not be extended beyond six years of the act or omission of alleged malpractice by a non-discovery thereof. . . ." The word "thereof" refers back to the words "the act or omission of alleged malpractice." See 2A Sands, Statutes and Statutory Construction §§ 47.08 and 47.33. Only when the plaintiff has not discovered "the act or omission of alleged malpractice" does the two-year statute extend to a maximum of six years. The issue in this case involves the meaning of this phrase. Dr. Shook argues that because the statute refers to discovery of "the act," the statute begins to run when the plaintiff discovers the possibly negligent act. We disagree.

Dr. Shook's construction of § 28–01–18, NDCC, encourages any person who has an injury to file a lawsuit against a physician or hospital to prevent the statute of limitation from running. This is contrary to the policy that unfounded claims should be strongly discouraged. See *Foil v. Ballinger,* 601 P.2d 144, 148 (Utah 1979). The better interpretation of § 28–01–18 is that discovery of "the act or omission of alleged malpractice" refers to discovery of medical malpractice consisting of breach of a duty, injury, and causation. In most medical malpractice cases discovery of the injury and its cause is all that is required to trigger the statute of limitation because breach of a legal duty is apparent to laymen and experts alike. Relatively few jurisdictions have litigated actions of medical technical complexity in which a reasonably diligent plaintiff knows of his injury and its cause, but has no reason to suspect malpractice. See 4 W. New Eng.L.Rev. 155, 161, 164, 166 (1981). See also *Dawson v. Eli Lilly Co.,* 543 F.Supp. 1330, 1338 (D.C.1982).

Dr. Shook and the trial court relied upon *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), in their resolution of this issue. In *Kubrick* the plaintiff was treated in 1968 at a Veterans Administration Hospital for an infection of the right femur. The plaintiff knew that the treatment caused his hearing loss, but he did not suspect that he had received negligently performed treatment until 1971. Kubrick brought a medical malpractice action against the government under the Federal Tort Claims Act (FTCA). The Supreme Court held that the statute of limitation for actions brought under the FTCA barred recovery because Kubrick's claim had accrued when he was aware of his injury and its probable cause. *Id.* at 124, 100 S.Ct. at 360, 62 L.Ed.2d at 269. See generally 18 Cal.W.L.Rev. 123 (1982); 4 W.New Eng.L.Rev. 155 (1981).

Courts in the District of Columbia and Hawaii have specifically rejected the *Kubrick* position. In *Jacoby v. Kaiser Foundation Hospital,* 1 Hawaii App. 519, 622 P.2d 613 (1981), the Hawaii court discussed *Kubrick* as follows:

"There are two differences between HRS § 657–7.3 and the FTCA which cause us to reject *Kubrick's* interpretation.

"First, in *Kubrick,* one of the major difficulties Justice White had . . . was that:

'[T]he plaintiff in such cases need not initiate a prompt inquiry and would be free to sue at any time within two years from the time he receives or perhaps forms for himself a reasonable opinion that he has been wronged. . . .' "

*Kubrick, supra,* 444 U.S. at 118, 100 S.Ct. at 357, 62 L.Ed.2d at 267.

"We do not have this problem in Hawaii. HRS § 657–7.3 limits 'the time within which the action may be initiated to six years after the date of the opera-

tion or two years after the injured person discovers the injury, whichever occurs sooner' . . . .

"Second, we think the 'through the use of reasonable diligence should have discovered' language in our statute adequately covers and includes the duty of reasonably diligent inquiry which Justice White talked about in *Kubrick.*

. . . . .

"Thus, we hold that HRS § 657–7.3's two-year limitation commences to run when plaintiff discovers, or through the use of reasonable diligence should have discovered, (1) the damage; (2) the violation of the duty; and (3) the causal connection between the violation of the duty and the damage." 1 Hawaii App. at 525, 622 P.2d at 617.

See also *Yamaguchi v. Queen's Medical Center,* Hawaii, 648 P.2d 689, 694 n. 10 (1982).

In *Dawson v. Eli Lilly and Co.,* 543 F.Supp. 1330 (D.C.1982), the court analyzed *Kubrick* and cases from several states before determining the law in the District of Columbia. The court reasoned as follows:

"This policy [of a discovery rule] is applied to different factual situations as they arise. Where the injury is latent, the claim is held not to accrue until the plaintiff discovers the injury. Where causation of an injury is unknown, the action accrues when both the injury and its cause have been (or should have been) discovered. Where the injury and causation are known, but not that there has been any wrongdoing, the action is held to accrue when the plaintiff discovered, or by due diligence should have discovered, the wrongdoing. We believe the District of Columbia courts would follow this progression . . . . We predict that the District of Columbia Court of Appeals would hold that the statute of limitations in this case did not begin to run until plaintiff learned, or in the exercise of due diligence should have learned, that her injuries were the result of some wrongdoing on the part of the defendants. This does not mean that plaintiff had to be aware of all the elements of a legal cause of action, of the probability of success in such a lawsuit, or that her knowledge of wrongdoing had to rise to a level of certainty. It merely means that she had to have some awareness, or imputed awareness, that her injuries were the result of some wrongdoing on the part of defendants . . . ." 543 F.Supp. at 1338–39.

Courts in Utah and Oregon have also adopted the theory Anderson urges us to adopt. The Utah Supreme Court determined that Utah's statute of limitations begins to run "when an injured person knows or should know that he has suffered a legal injury." *Foil v. Ballinger,* 601 P.2d 144, 147 (Utah 1979). The Utah court reasoned:

"In the health care field it is typically the case that there often is a great disparity in the knowledge of those who provide health care services and those who receive the services with respect to expected and unexpected side effects of a given procedure, as well as the nature, degree, and extent of expected after effects. While the recipient may be aware of a disability or dysfunction, there may be, to the untutored understanding of the average layman, no apparent connection between the treatment provided by a physician and the injury suffered. Even if there is, it may be passed off as an unavoidable side effect or a side effect that will pass with time . . . ." *Foil, supra,* 601 P.2d at 147.

The Utah court concluded that it saw no basis for making a legal distinction between having no knowledge of an injury and having no knowledge that a known injury was caused by unknown negligence. *Id.* at 148.

An Oregon appellate court similarly concluded that a "plaintiff should discover that he has a cause of action when he realizes (1) that he has been injured, (2) that the injury can be attributed to an act of the alleged tortfeasor, and (3) that the act of the alleged tortfeasor was somehow negligent." *Hoffman v. Rockey,* 55 Or.App. 658, 663, 639 P.2d 1284, 1286 (1982). See *Dawson, supra,* 543 F.Supp. at 1334–36 for further

discussion of jurisdictions which adopt this view.

The adoption of the *Kubrick* position or the position adopted in Hawaii by a jurisdiction may depend upon its balancing of competing policies. Statutes of limitation inherently involve a balancing of interests. On the one hand, parties injured by the action of others must be given an opportunity to seek relief in the courts. On the other hand, potential defendants are entitled to eventual repose. The intended effect of statutes of limitation is to stimulate activity and punish neglect. Faded memories, dead or unavailable witnesses, and lost or destroyed evidence cause difficulties in defending stale claims. See *Kubrick, supra,* 444 U.S. at 117, 100 S.Ct. at 357, 62 L.Ed.2d at 266; *Myrick v. James,* 444 A.2d 987, 994 (Me.1982). "Statutes of limitation find their justification in necessity and convenience rather than logic." *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628, 1635 (1945).

■ Often courts must consider two arguably valid solutions to one problem. The North Dakota Legislature has not indicated which of the policies surrounding statutes of limitation should be considered paramount when there is a conflict. Unless the "physician's activity constitutes a blunder so egregious that a layman is capable of comprehending its enormity" (*Winkjer v. Herr,* 277 N.W.2d 579, 585 (N.D.1979)), the injustice of barring a plaintiff's claim before she reasonably could be aware of it is obvious. The North Dakota Legislature has placed a six-year maximum time limit upon the bringing of a medical malpractice action. "Legislative limiting of the amount of time within which a medical malpractice claim may be brought to within a specific period from the date of the negligent act illustrates that the policy of attempting to compensate all victims of medical negligence through the judicial adoption of the discovery rule clearly has yielded to economic realities." 4 W.New Eng.L.Rev. 155, 165 (1981). We believe that the policies allowing a plaintiff to bring an action when she has knowledge of her injury, its cause, and the possible negligence of the physician or hospital outweigh those policies which would bar a consideration of the merits of an action brought within the six-year period from the time of the alleged negligent act or omission. We hold that the North Dakota medical malpractice two-year statute of limitations begins to run when the plaintiff knows, or with reasonable diligence should know, of her injury, its cause, and the defendant's possible negligence, "provided, however, that the limitation of an action against a physician or licensed hospital will not be extended beyond six years of the act or omission of alleged malpractice by a non-discovery thereof . . . ." Section 28–01–18, NDCC.

■ The issue now arises regarding whether or not any genuine issues of material fact exist concerning the knowledge Anderson had, or in the exercise of reasonable diligence should have had, regarding Dr. Shook's alleged negligence. This is a genuine issue of fact which prevents the court from granting the motion for summary judgment. Accordingly, we make no comment concerning whether or not in this case the statute bars Anderson's claim. "Summary judgment is not appropriate . . . if reasonable differences of opinion exist as to the inferences to be drawn from undisputed facts." *Krueger v. St. Joseph's Hospital,* 305 N.W.2d 18, 22 (N.D.1981). We note that when the time period of the statute has run, the plaintiff has the burden of proving the facts suspending the statute. *Johnson v. Haugland,* 303 N.W.2d 533, 540 (N.D.1981).

Reversed and remanded.

ERICKSTAD, C.J., VANDE WALLE and SAND, JJ., and HEEN, District Judge, concur.

HEEN, District Judge, participated in place of PAULSON, J., disqualified.