917 P.2d 718

Sean HAYS, Plaintiff–Appellant,

v.

CITY AND COUNTY OF HONOLULU,
Defendant–Appellee,

and

John Does 1–5, John Doe Corporations 1–5,
John Doe Partnerships 1–5, Roe Corpo-
rations 1–5, Roe Partnerships 1–5, and
Roe Governmental Agencies 1–5, Defen-
dants.

No. 18824.

Supreme Court of Hawai'i.

May 24, 1996.

James Krueger, Peter T. Cahill and John
M. O'Neill of Krueger and Cahill, on the
briefs, Wailuku, Maui, for plaintiff-appellant
Sean Hays.

Darolyn Hatsuko Lendio, Corporation
Counsel, Honolulu, Hale, and Daniel J.
Kunkel, former Deputy Corporation Counsel,
on the briefs, Honolulu, for defendant-appel-
lee City and County of Honolulu.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

In this beach injury case, plaintiff-appellant Sean Hays appeals from the First Circuit Court's order granting summary judgment in favor of defendant-appellee City and County of Honolulu (the city). Hays argues on appeal that the circuit court erred in concluding that the "discovery rule" did not apply in the present case and that Hays's claim was therefore barred by the statute of limitations. For the following reasons, we affirm.

## I. BACKGROUND

On December 7, 1986, Hays was sitting with a friend on a low-lying rocky point protruding into the ocean at Makapu'u Beach Park on O'ahu. Therefrom, he dove headfirst into the ocean, struck his head on the ocean bottom, and suffered serious cervical/spinal injuries that rendered him a quadriplegic. On the day of the incident, there was at least one lifeguard, employed by the city, on duty at Makapu'u Beach Park, but there were no warning signs posted. Hays was eighteen years old at the time he was injured.

Approximately seven and one-half years later, on the evening of March 20, 1994, Hays was watching a television news program that referred to a multi-million dollar verdict in a case against the city. The case involved a young man who, like Hays, dove off a rocky point into the ocean, struck the ocean bottom, and was rendered a quadriplegic. Hays called the television station the next day, seeking the name of the attorney who represented the injured young man mentioned in the news program. Hays contacted the attorney, who later met with him, and informed him that he might have a claim against the city.

Thereafter, Hays filed a complaint against the city on June 22, 1994, essentially asserting a cause of action for negligent failure to warn. The city moved for summary judgment, asserting that Hawai'i Revised Statutes (HRS) § 657–7 (1993),[1] which provides for a two-year statute of limitations applicable to actions for damage to persons or property, barred Hays's claim. The circuit court granted summary judgment in favor of the city, and Hays timely appealed.

## II. STANDARD OF REVIEW

It is well settled that:

We review [a] circuit court's award of summary judgment de novo under the same standard applied by the circuit court. Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 104, 839 P.2d 10, 22, reconsideration denied, 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). As we have often articulated,

[s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

1. HRS § 657–7 provides:

**Damage to persons or property.** Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657–13.

It further appears from the record that the city also asserted HRS § 662–4 (1993) as a basis for summary judgment. HRS § 662–4 provides:

**Statute of limitations.** A tort claim against the State shall be forever barred unless action is begun within two years after the claim accrues, except in the case of a medical tort claim when the limitation of action provisions set forth in section 657–7.3 shall apply.

Although HRS § 662–4 specifically applies to actions brought against the State, this court has held that HRS § 662–4 also applies to actions brought against the city. See Orso v. City and

County of Honolulu, 56 Haw. 241, 247, 534 P.2d 489, 493 (1975) ("[C]laims against the City and County of Honolulu are governed by the two-year limitations of HRS § 662–4."); Salavea v. City and County of Honolulu, 55 Haw. 216, 220–21, 517 P.2d 51, 54–55 (1973) ("The basic theory of governmental tort liability in Hawaii is that the State and its political subdivisions shall be held accountable for the torts of governmental employees '... in the same manner and to the same extent as a private individual under like circumstances ...'[.] ... We therefore hold that HRS § 662–4 is the applicable statute of limitations[.]") (Citation omitted.).

Under either HRS §§ 657–7 or 662–4, the limitations period is two years, and the rationale surrounding the discovery rule, as developed under HRS § 657–7, premised on an interpretation of the term "accrues," applies to HRS § 662–4, which also utilizes the term "accrues."

together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law.

*Id.* (emphasis added) (citation and internal quotation marks omitted); *see* Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (1990). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.*, 65 Haw. 58, 61, 647 P.2d 713, 716 (1982) (citations omitted).

*Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995).

## III. *DISCUSSION*

### A. *The Development of the "Discovery Rule" in Hawai'i*

In *Yoshizaki v. Hilo Hospital*, 50 Haw. 150, 433 P.2d 220 (1967), a medical malpractice case, this court adopted what has become known as the "discovery rule," which states that, under the statute of limitations currently codified in HRS § 657-7, a cause of action does not "accrue," and the limitations period therefore does not begin to run, until the plaintiff knew or should have known of the defendant's negligence. The *Yoshizaki* court noted:

The basic policy underlying statutes of limitation is to require prompt assertion of claims.

They [statutes of limitation] are founded upon the general experience of mankind that claims, which are valid, are not usually allowed to remain neglected. The lapse of years without any attempt to enforce a demand creates, therefore, a presumption against its original validity, or that it has ceased to subsist. This presumption is made by these statutes a positive bar; and they thus become statutes of repose, protecting parties from the prosecution of stale claims, when, by loss of evidence from death of some witnesses, and the imperfect recollection of others, or the destruction of documents, it might be impossible to establish the

truth. *Riddlesbarger v. Hartford Ins. Co.*, 74 U.S. (7 Wall.) 386, 390, 19 L.Ed. 257 (1868).

But by the same token, the plaintiff in this case asserts another important policy, that favoring adjudication of claims on the merits and ensuring that a party with a valid claim will be given an opportunity to present it.

. . . .

We conclude that the statute does not begin to run until the plaintiff knew or should have known of the defendant's negligence. This conclusion is consistent with the legislative prescription to avoid constructions which would lead to absurd results. The injustice of barring the plaintiff's action before [he or] she could reasonably have been aware that [he or] she had a claim is patent. A basic reason underlying statutes of limitation is nonexistent; the plaintiff has not delayed voluntarily in asserting [his or] her claim. We realize that added burdens are placed on defendants by forcing them to defend claims with evidence that may be stale. We should not overlook the fact that the plaintiff must produce evidence sufficient to establish a prima facie case before the defendant is obliged to produce any evidence. . . .

We conclude that the conflicting policies are best reconciled by permitting the plaintiff the opportunity to prove that [he or] she neither knew nor could reasonably have been expected to know of the defendant's alleged negligence until the date alleged in [his or] her complaint.

*Id.* at 154–55, 433 P.2d at 223–24 (footnote omitted).

Approximately one year later, in *Basque v. Yuk Lin Liau*, 50 Haw. 397, 441 P.2d 636 (1968), this court extended *Yoshizaki* beyond the medical malpractice context, applying the discovery rule in a case involving injury to real property, and held that:

In *Yoshizaki*, we construed [Revised Laws of Hawaii ( ]R.L.H.[ ) ] 1955,

§ 241–7,[2] which applies to cases of injury to property as well as to injury to persons. On appeal in this case, the defendants argued that *Yoshizaki* should not be extended to cases involving injury to real property. Although there are factual differences between actions to recover damages to persons and property, they are insufficient to justify a different construction of the same statute.

*Id.* at 398–99, 441 P.2d at 637 (footnote omitted). *See also Waugh v. University of Hawaii,* 63 Haw. 117, 621 P.2d 957 (1980) (Applying *Yoshizaki* rule to a claim for loss of personal property).

In 1973, the legislature enacted HRS § 657–7.3,[3] providing a specific statute of limitations applicable to medical malpractice actions, which actions had theretofore been governed by the two-year statute of limitations set forth in HRS § 657–7. Thereafter, the Intermediate Court of Appeals (ICA) held that the discovery rule applicable to HRS § 657–7, pursuant to *Yoshizaki,* applied to HRS § 657–7.3 as well. The ICA reasoned:

> The general issue is whether, as a matter of law, plaintiffs' malpractice claims are barred by the applicable statute of limitations. The specific issue is when the statutory period began to run . . . .
>
> Prior to Act 92, Session Laws of Hawaii 1973, (HRS § 657–7.3), the applicable statute of limitations was contained in Revised Laws of Hawaii (RLH) [19]55, section 241–7. The time specified in RLH [19]55, section 241–7, was "two years after the cause of action accrued". Prior to November 3, 1967, the two years "commenced running

at the time of the suffering of damage from the treatment, and was not deferred until the discovery of the fault in the diagnosis". *Yoshizaki v. Hilo Hospital,* 50 Haw. 1, 4, 427 P.2d 845, 847 (1967) (*Yoshizaki I* ). However, *Yoshizaki v. Hilo Hospital,* 50 Haw. 150, 433 P.2d 220 (1967) (*Yoshizaki II*), held that "the statute does not begin to run until the plaintiff knew or should have known of the defendant's negligence". *Yoshizaki II,* 50 Haw. at 154, 433 P.2d at 223. From and after May 15, 1973, the applicable statute of limitations was contained in HRS § 657–7.3. The time specified in HRS § 657–7.3 is "two years after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, but in any event not more than six years after the date of the alleged act or omission causing the injury or death".

> *Yoshizaki II* (effective November 3, 1967), ran the statute from the discovery of the "negligence". HRS § 657–7.3 (effective May 15, 1973), runs the statute from the discovery of the "injury". Legislative history concerning HRS § 657–7.3 indicates no significant difference between the two words.
>
> [M]any times it would be impossible for the injured person to discover the alleged malpractice until some time after the usual two year statute of limitations. This being so until he [or she] discovers that a wrong has been committed against him [or her], he [or she] should not be held to the same strict tort statute of limitations.

---

2. R.L.H.1955, § 241–7 was substantively identical to the current HRS § 657–7 and provided in pertinent part:

   **Damage to persons or property.** Actions for the recovery of compensation for damages or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after.

3. HRS § 657–7.3 (1993) provides in pertinent part:

   **Medical torts; limitation of actions; time.** No action for injury or death against a . . . physician or surgeon . . . duly licensed or registered under the laws of the State, or a licensed hospital as the employer of any such

person, based upon such person's alleged professional negligence, or for rendering professional services without consent, or for error or omission in such person's practice, shall be brought more than two years after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, but in any event not more than six years after the date of the alleged act or omission causing the injury or death. This six-year time limitation shall be tolled for any period during which the person has failed to disclose any act, error, or omission upon which the action is based and which is known to the person.

SC Rep. No. 455, 1973 HOUSE JOURNAL at 947; SC Rep. No. 665, 1973 SENATE JOURNAL at 907. *Thus we hold that the applicable rule under Yoshizaki II is the same as the rule under HRS § 657–7.3 and that one rule applies to the entire time period involved in this case.*

*Jacoby v. Kaiser Found. Hosp.,* 1 Haw.App. 519, 522–23, 622 P.2d 613, 615–16 (1981) (emphasis added). The *Jacoby* court then went on to interpret this "one rule" by reference to the reasoning applied to the discovery rule in other jurisdictions, stating:

In California, the applicable statute runs "after the accrual of the cause of action". This statute has been interpreted to mean that:

In a suit for malpractice the statute of limitations commences to run when the plaintiff discovers the injury and its negligent cause or through the exercise of reasonable diligence should have discovered it.

*Wozniak v. Peninsula Hospital,* 1 Cal. App.3d 716, 722, 82 Cal.Rptr. 84 (1969).

Thus, in California, the time does not begin to run until the plaintiff discovers (1) the damage; (2) the cause; and (3) the fact that the cause is negligent.

The Federal Tort Claims Act's (FTCA) statute of limitations run "after such claim accrues". USCA Title 28, § 2401(b). The United States Supreme Court interprets the FTCA's language differently than the California Supreme Court interprets the similar language of its statute.

We thus cannot hold that Congress intended that "accrual" of a claim must await awareness by the plaintiff that his [or her] injury was negligently inflicted. A plaintiff such as Kubrick, armed with the facts about the harm done to him [or her], can protect himself [or herself] by seeking advice in the medical and legal community. To excuse him [or her] from promptly doing so by postponing the accrual of his [or her] claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government. * * * But however or even whether he [or she] is advised, the putative malpractice plaintiff must determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make. If he [or she] fails to bring suit because he [or she] is incompetently or mistakenly told that he [or she] does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself [or herself] determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury.

*U.S. v. Kubrick,* 444 U.S. 111, 123–124, 100 S.Ct. 352, 360, 62 L.Ed.2d 259, 270–71 (1979).

Thus, the FTCA's time runs when a plaintiff discovers (1) the cause and (2) the damage. Plaintiff must discover the fact that the cause is negligent while the clock is running.

There are two differences between HRS § 657–7.3 and the FTCA which cause us to reject *Kubrick*'s interpretation.

First, in *Kubrick,* one of the major difficulties Justice White had with the California interpretation was that:

[T]he plaintiff in such cases need not initiate a prompt inquiry and would be free to sue at any time within two years from the time he [or she] receives or perhaps forms for himself [or herself] a reasonable opinion that he [or she] has been wronged. In this case, for example, Kubrick [ (underscored in original) ] would have been free to sue if Dr. Soma had not told him until 1975, or even 1980, instead of 1972, that the neomycin treatment had been a negligent act.

*Kubrick, supra,* [444 U.S. at 117–19, 100 S.Ct. at 357], 62 L.Ed.2d at 267.

We do not have this problem in Hawaii. HRS § 657–7.3 limits "the time within which the action may be initiated to six years after the date of the operation or two years after the injured person discovers the injury, whichever occurs sooner".

1973 HOUSE JOURNAL at 947; 1973 SENATE JOURNAL at 907.

Second, we think the "through the use of reasonable diligence should have discovered" language in our statute adequately covers and includes the duty of reasonably diligent inquiry which Justice White talked about in *Kubrick.*

Therefore, in interpreting our statute, we reject the FTCA rule and adopt, with clarification, the California rule.

We conclude that in the context of this kind of case injury is legal injury is legal wrong is malpractice is cause of action is negligence.

Thus, we hold that HRS § 657–7.3's two-year limitation commences to run when plaintiff discovers, or through the use of reasonable diligence should have discovered, (1) the damage; (2) the violation of the duty; and (3) the causal connection between the violation of the duty and the damage.

*Id.* at 523–25, 622 P.2d at 616–17 (footnote omitted).

Thereafter, in *Yamaguchi v. The Queen's Medical Center,* 65 Haw. 84, 648 P.2d 689 (1982), this court approved of the ICA's rationale in *Jacoby,* holding that the limitations period "under HRS §§ 657–7 and 657–7.3, [begins to run at] the moment plaintiff discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter." *Id.* at 90, 648 P.2d at 693–94 (citation omitted). The *Yamaguchi* court further noted that

[t]he *Jacoby* construction of HRS §§ 657–7.3 and 657–7 as interpreted in *Yoshizaki* provided the necessary consistency between the two statutes while accommodating the conflicting policies underlying statutes of limitations recognized by this court in *Yoshizaki*—namely, the prevention of stale claims, on one hand, while on the other the ensuring that a party with a valid claim will be given the opportunity to present it. In particular, the court's ruling addressed the predominant concern of the *Yoshizaki* court, that of "[t]he injustice of barring the plaintiff's action before [he or] she could reasonably have been aware that [he or] she had a claim," by requiring that

the plaintiff have knowledge of those facts which are necessary for an actionable claim before the statute begins to run.

*Id.* at 91 n. 10, 648 P.2d at 694 n. 10 (citation omitted). *See also Pele Defense Fund v. Paty,* 73 Haw. 578, 837 P.2d 1247 (1992) (terming HRS § 657–7 the "'general' *personal injury* statute of limitations[,]" which "runs from the date that [a plaintiff's] cause of action accrued—that is, when [the plaintiff] discovered or should have discovered the breach of [duty], the injury . . ., and the connection between the breach and the injury[,]" citing *Yamaguchi* (emphasis in original), *cert. denied,* 507 U.S. 918, 113 S.Ct. 1277, 122 L.Ed.2d 671 (1993)).

B. *The Discovery Rule Should Not Prevent the Running of a Statute of Limitations Where All That Has Not Been "Discovered" by a Plaintiff Is the Existence of a Legal Duty on the Part of a Defendant.*

■■■■ Hays argues that the circuit court erred in holding that the discovery rule did not apply in the present case because, although Hays knew that he was injured, he did not learn that he had a cause of action prior to viewing the television news program and consulting with his attorney some seven years after his injury. Relying on the discovery rule as formulated by *Yamaguchi* and *Jacoby,* Hays maintains that, until he saw the news program and contacted his attorney, he did not know: (1) the city's negligent act or omission; and (2) the connection between the city's negligent act or omission and his injury. We disagree for three principal reasons.

First, in actuality, it is not the city's negligent act or the connection between the city's negligent act and his injury that Hays did not "discover" prior to the filing of his complaint, but rather the presence of a *legal duty* on the part of the city to warn him of dangerous conditions on city-controlled beaches. We note that Hays, in an affidavit submitted in support of his memorandum in opposition to the city's motion for summary judgment, averred in pertinent part:

1. On December 7, 1986, when I was 18 years old, I was with friends at Makapuu Beach Park, sitting with a friend on a low-

lying rocky point jutting makai from the beach. From there I dived into the ocean and struck my head on the ocean floor, I believe, as a result of which I have been rendered a quadriplegic.

2. When I was injured, there was at least one lifeguard employed by the CITY AND COUNTY OF HONOLULU on duty at Makapuu.

3. I had always assumed that the presence of the lifeguard on duty when I was hurt absolved the CITY of any responsibility for my injuries.

4. Although there were no signs warning swimmers not to dive from the rocky point, let alone any dangers resulting from such activity, I did not know there should have been.

. . . .

6. Until very recently, *I was completely unfamiliar with the law in this state* applicable to beach injury matters.

7. Until I first contacted James Krueger on March 21, 1994, I was wholly unaware that the *law of the State of Hawaii imposed a duty* upon a lifeguard to properly supervise beachgoers, such as myself, nor did I know, or have reason to know, that there was anything which would have been called "negligent lifeguard supervision", which may have been a cause of injuries or damages sustained by me.

8. I was unaware, until advised by my attorney, that the *law* required a governmental entity, such as the CITY AND COUNTY OF HONOLULU to warn, or post signs, describing not only the hazard of diving from the rocky point into the adjacent ocean, let alone the risk of harm stemming therefrom, or prevent access to such areas.

9. Until I contacted and retained James Krueger to represent me, I was entirely unaware that anything the CITY AND COUNTY OF HONOLULU did, or did not do, was *legally* a cause of my injuries.

(Emphases added.)

Viewed in the context of the assertions made in his affidavit, Hays's arguments that he did not discover either the city's negligent act or the connection between the city's negligent act and his injuries are unpersuasive. The purported deficiencies in Hays's knowledge regarding both the city's negligent act and the connection between the negligent act and his injury stem from Hays's admitted lack of knowledge regarding the city's legal duty to warn, which is a pure question of law, and, pursuant to *Yamaguchi,* the failure of which to discover does not delay the start of the two-year limitations period under HRS § 657–7.

More specifically, Hays's statement in his affidavit that he "had always assumed that the presence of the lifeguard on duty when I was hurt absolved the CITY of any responsibility for [his] injuries" clearly indicates that Hays was cognizant of the concept of duty and that the city owed such duty to the beach-going public, including himself. The deficiency in Hays's knowledge, therefore, was not that he did not know that the city owed him a duty in general, but that he did not know that the city owed him a specific, actionable duty. By assuming that the presence of the lifeguard absolved the city of any and all duties it may have owed him, Hays unwisely "took the law into his own hands" and effectively allowed his claim to lapse.

Second, the facts of the present case are readily distinguishable from other factual situations in which both this court, as well as federal courts interpreting Hawai'i law, have previously applied the discovery rule. In the present case, the alleged deficiencies in Hays's knowledge regarding both the city's negligent act or breach of duty and the causal connection between the city's negligent act or breach and his injury, do not stem from: (1) Hays's inability to ascertain the necessary factual foundation upon which to base the elements of his negligence claim, such as lacking specialized medical knowledge, *see, e.g., Yoshizaki,* 50 Haw. at 150, 433 P.2d at 221 (plaintiff unaware that first physician's diagnosis incorrect until receipt of treatment from second physician for condition stemming from treatment pursuant to first diagnosis); *Jacoby,* 1 Haw.App. at 520–21, 622 P.2d at 614–15 (plaintiff unaware that second ailment causally related to treatment for first condition until she sought treatment for sec-

ond ailment); (2) an alleged concealment of facts regarding the cause of his injuries, *see, e.g., Yamaguchi,* 65 Haw. at 87, 648 P.2d at 691 ("Appellant's principal contention on appeal is that the statute of limitations was tolled by appellees' (essentially the hospital's) failure to disclose information of alleged acts of negligence constituting the basis of his claim, or at least that an issue of material fact concerning appellees' concealment of incriminating information remained, precluding summary judgment."); or (3) inherent difficulties in the nature of the injury or the causal relationship between the negligent act and the injury, such as technological, scientific, or medical limitations. *See, e.g., In re Hawaii Federal Asbestos Cases,* 734 F.Supp. 1563, 1566 (D.Hawai'i 1990) ("Many ... claims of injury [from asbestos exposure] are based on subjective declarations of shortness of breath, tiredness and general lassitude. X-rays may or may not show the presence of asbestos-induced changes in the lung. Even many forms of pulmonary analysis are not definitive in measuring impairment.... All of the above indicates a need for some form of easily verifiable standard for determining whether an 'injury' exists and when such injury warrants an award of compensation." (Footnotes omitted.)). To the contrary, Hays admits in his affidavit that he was aware of the lack of warning signs and that he was injured when he dove into the ocean and struck the ocean bottom. As *Yamaguchi* provides, the discovery rule prevents the running of the statute of limitations "until [the] plaintiff [has] knowledge of those *facts* which are necessary for an actionable claim before the statute begins to run." It does not delay the start of the limitations period until the plaintiff learns of the legal duty upon which he or she may base a cause of action.

Finally, and perhaps most importantly, application of the discovery rule to delay the start of the limitations period applicable to Hays's claim in the present case would effectively subvert HRS §§ 657–7 and 662–4 and, very likely, all statutes of limitation in general. In the present case, Hays seeks equitable relief, in the form of the discovery rule, from the time limitations imposed by HRS §§ 657–7 and/or 662–4, essentially because

he did not seek the advice of an attorney regarding the law applicable to the circumstances surrounding his injury. To apply the discovery rule in the present case would effectively allow plaintiffs to indefinitely preserve a claim and delay the start of the statutory limitations period until he or she seeks legal advice. As the United States District Court for the District of Hawai'i appropriately noted in *In re Hawaii Federal Asbestos Cases,* 854 F.Supp. 702 (D.Hawai'i 1994):

> A discovery rule which conditions accrual of an action on a plaintiff's specific knowledge of another's negligence means, in many cases, that an action will not accrue until a party walk's [sic] into a lawyer's office and is advised that he [or she] has an actionable claim. This should not be the law. A party must exercise reasonable diligence in pursuing a claim. If a plaintiff fails to exercise such diligence in a timely manner, the cause of action should be barred by the statute of limitations.

*Id.* at 708.

Moreover, as we have often noted in the past, "duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Johnston v. KFC Nat'l Management Co.,* 71 Haw. 229, 232, 788 P.2d 159, 161 (1990) (citations omitted). Duty is a fluid concept, and "as our ideas of human relations change[,] the law as to duties changes with them.... Changing social conditions lead constantly to the recognition of new duties." *Id.* (quoting W.P. Keeton, *Prosser & Keeton on The Law of Torts* § 53, at 359 (5th ed. 1984)). To hold that Hays's ignorance of a duty to warn on the part of the city entitles him to application of the discovery rule in the present case not only would allow plaintiffs to indefinitely delay the start of the limitations period until they seek the advice of an attorney, but, taking the position to its logical extreme, would also allow plaintiffs to indefinitely delay the start of the limitations period until society recognizes an actionable duty applicable to the injuries sustained.

In view of the foregoing, although we are very conscious of the serious extent of Hays's injuries and sympathize with Hays's unfortunate condition, we nevertheless are compelled to hold that a plaintiff's lack of knowledge regarding a legal duty, the breach of which may have caused the plaintiff injury, will not justify application of the discovery rule. In other words, an essential part of an injured plaintiff's duty of diligence regarding the timely prosecution of his or her claim imposed by a statute of limitations is to seek legal advice regarding the presence and/or viability of a potential claim; a plaintiff's failure to seek legal advice from an attorney will not alone entitle the plaintiff to respite from a statute of limitations.

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's order granting summary judgment in favor of the city.