434 So.2d 1011 (1983)
Gregory L. WILHELM and Terri Wilhelm, His Wife, and Doctors Mercy Hospital, Ltd., D/B/a Brookwood Community Hospital, Appellants,
v.
A.R. TRAYNOR, Jr., D.O., Orlando General Hospital, Inc., Etc., and James J. Hynick, D.O., Appellees.
Nos. 82-426, 82-427 and 82-428.
District Court of Appeal of Florida, Fifth District.
July 21, 1983.
Karl O. Koepke of Whitaker & Koepke, Chartered, Orlando, for appellants, Wilhelm.
William E. Johnson of Parker, Johnson, Owen & McGuire, Orlando, for appellant, Doctors Mercy Hosp.
Robert C. Cooper of Cooper & Rissman, P.A., Orlando, for appellee, Orlando General Hosp., Inc.
*1012 Ernest H. Eubanks of Pitts, Eubanks & Ross, P.A., Orlando, for appellee, James J. Hynick, D.O.
Russell Troutman of Troutman, Parrish & Williams, Winter Park, for appellee, A.R. Traynor, Jr., D.O.
FRANK D. UPCHURCH, Jr., Judge.
Appellant, Gregory L. Wilhelm, sued appellees for damages caused by appellees' failure to diagnose and treat his cancer, resulting in the loss of his leg. Appellant Doctors Mercy Hospital, Ltd. was also a defendant below, but it joins as an appellant in this action under the authority of Pensacola Interstate Fair, Inc. v. Popovich, 389 So.2d 1179 (Fla. 1980), which holds that an appeal may be taken from an order which exonerates co-defendants. The trial court entered final summary judgment on the basis that Wilhelm knew in March 1979, more than two years before filing suit that a lesion on his knee was cancerous. See § 95.11(4)(b), Fla. Stat. (1979).
In March 1978, Wilhelm consulted Dr. Hynick for an ulcer in an area of psoriasis on his knee. Dr. Hynick had the area biopsied, but concluded it was not cancer when the pathology reports came back negative. The pathologist was Dr. Traynor, who practiced at Orlando General Hospital. When growths or nodules continued to appear over the year that Dr. Hynick continued treatment, Dr. Hynick referred Wilhelm to a doctor who specialized in orthopedic surgery. He recommended radiation treatment. Dr. Hynick then referred Wilhelm to Dr. Sawyer at the radiation department of Orlando Regional Medical Center. On March 8, 1979, Dr. Sawyer told Wilhelm that the lesion was cancerous, but he thought that radiation would cure the cancer. During the ensuing radiation treatments, all but one small nodule disappeared. While swimming in July 1979, Wilhelm bumped his knee and the area began to grow again. In September he again bumped his knee and suffered extreme pain. Dr. Sawyer then referred him to Dr. Walton because he felt Wilhelm could take no more radiation therapy.
Dr. Walton recommended surgical removal of the lesion, but he discovered a tumor under the skin. He removed the tumor which was also cancerous, and attempted to repair the wound with skin grafts. Repeated grafts would not grow and a staphylococcus infection developed. On December 3, 1979, Wilhelm was told his leg would have to be amputated.
Wilhelm instituted suit on June 21, 1981, and a third amended complaint was filed on March 15, 1982. Appellees filed motions for summary judgment alleging that the two-year statute of limitations for medical malpractice actions had expired prior to the institution of the action. It is from the order granting the summary judgments that appellants take their appeal.
The ultimate issue in determining whether the claim was timely filed, is whether Wilhelm knew or, upon the exercise of reasonable diligence, could have known of the true nature of his illness more than two years prior to instituting suit.
The Third District, in Almengor v. Dade County, 359 So.2d 892, 894 (Fla. 3d DCA 1978), said:
It is the established law of this state that the statute of limitations in a medical malpractice action begins to run when the plaintiff has been put on notice of an invasion of his legal rights. This occurs when the plaintiff has notice of either (1) the negligent act giving rise to the cause of action, or (2) the existence of any injury which is the consequence of the negligent act, although the injury be slight and not involve all the damages later sustained.
In Roberts v. Casey, 413 So.2d 1226, 1229 (Fla. 5th DCA 1982), this court stated:
The statute of limitations in a medical malpractice action begins to run when the plaintiff has been put on notice of an invasion of his legal rights. Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976); Almengor v. Dade County, 359 So.2d 892 (Fla. 3d DCA 1978). This occurs when the plaintiff has notice of either the negligent act which causes the injury or the *1013 existence of an injury which is a consequence of the negligent act. Almengor at 894.
As to Dr. Hynick and Dr. Traynor, we conclude that summary judgment was proper. Dr. Hynick's diagnosis was apparently based only on the negative pathology reports. If he were negligent in failing to recognize and advise Wilhelm of the existence of cancer, this omission was known at the latest when Dr. Sawyer informed Wilhelm of the existence of cancer in March, 1979. From that date Wilhelm had two years to institute suit, which he failed to do.
Dr. Traynor only examined the tissue samples submitted by Dr. Hynick. If he were negligent in misreading the tissue samples, that omission was also known when Dr. Sawyer diagnosed the cancerous condition in March, 1979. Therefore, the summary judgment is also correct as to him.
As to Orlando General Hospital, the complaint alleged that Dr. Traynor was acting under the supervision, direction and control of Orlando General Hospital. Because Orlando General Hospital is only vicariously responsible for the acts of Dr. Traynor, and he has no liability, the hospital is not liable.
Dr. Hynick and Dr. Traynor did not see Wilhelm for treatment after he was seen by Dr. Sawyer in March 1979. Their errors or omissions, if any, were known at the time Dr. Sawyer diagnosed cancer. The fact that the full extent of Wilhelm's disease and its ultimate consequences were not known at that time, in our opinion, did not postpone the commencement of the nonclaim period.
AFFIRMED.
COWART, J., concurs.
SHARP, J., concurs in part and dissents in part with opinion.
SHARP, Judge, concurring in part and dissenting in part.
I agree the summary judgment was properly entered as to Dr. Traynor and the Orlando General Hospital[1], but I think there was a material question of fact as to the possible liability of Dr. Hynick.[2]
A party who moves for summary judgment must demonstrate that there are no genuine issues of material fact,[3] and a reviewing court must read the record with a view most favorable to the non-moving party. Here the record does not establish, one way or the other, what caused this appellant to suffer the amputation of his leg.
The record supports the inference here that there were at least two possible causes of the amputation. The first possibility was the missed diagnosis of skin cancer. That alleged malpractice is time-barred in this case because the appellant learned of the missed diagnosis more than two years before he filed suit.[4]
A second possible cause of the amputation was the delayed discovery and diagnosis *1014 of appellant's cancerous tumor. The record shows that Appellant did not learn about his tumor until much later, and his suit on this ground would not be time-barred.
NOTES
[1] MacMurray v. Board of Regents, 362 So.2d 969 (Fla. 1st DCA 1978).
[2] Johnson v. Mullee, 385 So.2d 1038 (Fla. 1st DCA 1980).
[3] Holl v. Talcott, 191 So.2d 40 (Fla. 1966); Alvarez v. Florida Power and Light Co., 260 So.2d 546 (Fla. 3d DCA 1972).
[4] This is a harsh result in this case. The common understanding among lay people is that skin cancer can be easily and readily cured by minor surgery or radiation treatment. It is not a "death sentence" to be told you have skin cancer. In fact in this case, the appellant was assured by Dr. Sawyer that his skin cancer could be completely cured by the radiation treatment. But, I feel bound to agree with the majority opinion on this point because of Roberts v. Casey, 413 So.2d 1226 (Fla. 5th DCA 1982), and Almengor v. Dade County, 359 So.2d 892 (Fla. 3d DCA 1978).

A better view would be to hold that the statute of limitations does not begin to run on a medical malpractice cause of action until the patient knows, or with reasonable diligence should know, of his injury, its cause and the possible negligence of the physician or hospital. Anderson v. Shook, 333 N.W.2d 708 (N.D. 1983). Until the appellant knew that he was going to lose his leg, because of the missed skin cancer diagnosis, he really did not know of his injury, in a meaningful sense. Johnson v. Mullee, 385 So.2d 1038 (Fla. 1st DCA 1980).