514 So.2d 52 (1987)
FLORIDA PATIENT'S COMPENSATION FUND, Petitioner,
v.
George BOUCHOC, et al., Respondents.
WINTER HAVEN HOSPITAL, INC., Petitioner,
v.
FLORIDA PATIENT'S COMPENSATION FUND, Respondent.
Elmer Maurer, M.D., Petitioner,
v.
FLORIDA PATIENT'S COMPENSATION FUND, RESPONDENT.
Nos. 69230, 69493 and 69421.
Supreme Court of Florida.
July 16, 1987.
Rehearing Denied October 27, 1987.
Joe N. Unger of the Law Offices of Joe N. Unger, P.A., Miami, Marguerite H. Davis of Swann & Haddock, P.A., Tallahassee, for Florida Patient's Comp. Fund.
Betsy E. Gallagher of Kubicki, Bradley, Draper, Gallagher & McGrane, Miami, for Bouchoc and St. Francis.
Julian Clarkson and Richard Nichols of Holland & Knight, Tallahassee, for Edna Peterson.
James C. Blecke, Miami, for Pierre Grondin, M.D.
Janet W. Adams and Jeffrey C. Fulford of Adams, Hill, Fulford and Morgan, Orlando, for Winter Haven Hosp., Inc.
Julian Clarkson of Holland & Knight, Tallahassee, for Elmer Maurer.
GRIMES, Justice.
We have for review two cases of the district courts of appeal which conflict with each other on the same point of law. Art. V, § 3(b)(3), Fla. Const.[1]
A more detailed recitation of the underlying facts may be found in the district courts' opinions. For our purposes, it is sufficient to recognize that Maurer, Bouchoc and the hospitals were all unsuccessful defendants in medical malpractice actions in which the jury verdicts each exceeded $100,000.[2] In addition to the amounts of the jury verdicts, the trial courts awarded attorneys' fees to the prevailing plaintiffs pursuant to section 768.56, Florida Statutes (1981). The pertinent portion of section 768.56 provided that:
Except as otherwise provided by law, the court shall award a reasonable attorney's fee to the prevailing party in any civil action which involves a claim for damages *53 by reason of injury, death, or monetary loss on account of alleged malpractice by any medical or osteopathic physician, podiatrist, hospital, or health maintenance organization.
§ 768.56(1), Fla. Stat. (1981).[3]
Maurer, Bouchoc and the hospitals were each members of the Florida Patient's Compensation Fund (Fund). The Fund was instituted in 1975 as a nonprofit entity to provide medical malpractice protection to the physicians and hospitals who joined it. See Department of Insurance v. South-east Volusia Hospital District, 438 So.2d 815 (Fla. 1983), appeal dismissed, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984). The Fund acts as a vehicle to pool and spread the risk of loss among all health care providers in Florida through yearly assessments. The creation of the Fund was the legislature's response to the medical malpractice insurance crisis which occurred in Florida during the mid-1970's. See ch. 75-9, Laws of Fla.
The provisions of the law creating the Fund which are pertinent to our consideration are:
(2) LIMITATION OF LIABILITY. 
... .
(b) A health care provider shall not be liable for an amount in excess of $100,000 per claim or $500,000 per occurrence for claims covered under subsection (3) if the health care provider had paid the fees required pursuant to subsection (3) for the year in which the incident occurred for which the claim is filed, and an adequate defense for the fund is provided, and pays at least the initial $100,000 or the maximum limit of the underlying coverage maintained by the health care provider on the date when the incident occurred for which the claim is filed, whichever is greater, of any settlement or judgment against the health care provider for the claim in accordance with paragraph (3)(e)... .
... .
(3) PATIENT'S COMPENSATION FUND. 
(a) The fund.  There is created a "Florida Patient's Compensation Fund" for the purpose of paying that portion of any claim arising out of the rendering of or failure to render medical care or services, or arising out of activities of committees, for health care providers or any claim for bodily injury or property damage to the person or property of any patient, including all patient injuries and deaths, arising out of the insureds' activities for those health care providers set forth in subparagraphs (1)(b) 1., 5., 6., and 7. which is in excess of the limits as set forth in paragraph (2)(b). The fund shall be liable only for payment of claims against health care providers who are in compliance with the provisions of paragraph (2)(b), of reasonable and necessary expenses incurred in the payment of claims, and of fund administrative expenses.
§ 768.54, Fla. Stat. (1981).
The issue in these cases is whether the attorneys' fees should be paid by the Fund or by the health care providers.[4] The Fund argues that the prevailing plaintiffs' attorneys' fees are not part of the "claim arising out of the rendering of or failure to render medical care or services" as required by section 768.54(3)(a). The health care providers argue that attorneys' fees are within the term "arising out of" which contemplates claims originating from, incident to or having some connection with the claim of medical malpractice. See Red Ball Motor Freight v. Employers Mutual Liability Insurance Co., 189 F.2d 374 (5th Cir.1951). Both arguments have some logic. However, when the purpose for which the Fund was created is considered, we think that the statutory language is properly construed to require the Fund to pay the attorneys' fees.
*54 The Fund was established to permit health care providers to protect themselves from the consequences of catastrophic verdicts in malpractice cases. Under the statutory scheme, by paying the requisite fees to the Fund, the health care providers limit their exposure to $100,000. They are required to either purchase underlying liability insurance in the amount of at least $100,000 or otherwise demonstrate financial responsibility to pay $100,000 as outlined in the statute. It is unreasonable to believe that the legislature would have intended that the health care providers be held responsible for the amount of attorneys' fees over and above the $100,000 when the statute contemplated that the Fund would pay all judgments in excess of $100,000.
The Fund argues that since section 768.54 which created the Fund was enacted several years before the passage of section 768.56 providing for attorneys' fees in malpractice actions, the legislature could not have contemplated that attorneys' fees would be paid by the Fund. Equally persuasive, however, is the contention that had the legislature not intended for the Fund to be liable for attorneys' fees, it would have so provided when it enacted section 768.56 as part of its program of continuing malpractice reform.
There is also support for our holding in the language of the original legislation which created the Fund. Section 768.54(3)(e)3 provided that:
A person who has recovered a final judgment ... against a health care provider who is covered by the fund may file a claim with the fund to recover that portion of such judgment which is in excess of $100,000... . In the event an account for a given year incurs liability exceeding $100,000 to all persons under a single occurrence, the persons recovering shall be paid from the account at a rate not more than $100,000 per person per year until the claim has been paid in full, except that court costs and reasonable attorney's fees shall be paid in one lump sum within 90 days after the ... judgment is rendered. Such fees shall not reduce the amount of the annual award.

(Emphasis added.) The emphasized language of the statute suggests that if the prevailing party's attorney's fees are part of the plaintiff's claims against a health care provider that exceed $100,000, the Fund must pay them. We reject the Fund's argument that the statutory language regarding the payment of attorneys' fees refers to the employment contract between the plaintiff and his own attorney.
Our holding should not be interpreted to preclude the payment of a prevailing party's attorney's fee award by a health care provider in every instance. To the extent that the plaintiff's attorneys' fees are payable under the provisions of the health care provider's liability insurance coverage, the Fund will not be responsible because section 768.54(2)(b) provides that the Fund shall only pay the excess over $100,000 or the maximum limit of the underlying coverage, whichever is greater.
We affirm the decision in Florida Patient's Compensation Fund v. Bouchoc. We quash the decision in Florida Patient's Compensation Fund v. Maurer to the extent that it requires the health care providers rather than the Fund to pay the plaintiff's attorney's fee.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, BARKETT and KOGAN, JJ., concur.
NOTES
[1] Florida Patient's Compensation Fund v. Maurer, 493 So.2d 510 (Fla. 2d DCA 1986); Bouchoc v. Peterson, 490 So.2d 132 (Fla.3d DCA 1986).
[2] The events giving rise to the medical malpractice actions occurred during February and March 1982.
[3] Section 768.56 was later repealed by chapter 85-175, Laws of Florida.
[4] The Fund's standing to attack the constitutionality of section 768.56 in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), was predicated upon the Fund's obligation to pay attorney's fees. However, in Rowe we did not specifically address the question presently before us.