524 So.2d 671 (1988)
FLORIDA PATIENT'S COMPENSATION FUND, Appellant,
v.
Harriet R. SITOMER, Robert B. Smith, M.D., et al., Appellees.
Robert B. SMITH, M.D., Appellant,
v.
Harriet R. SITOMER, et al., Appellees.
Robert B. SMITH, M.D., and Robert B. Smith, M.D., P.A., Appellants,
v.
Harriet R. SITOMER, Appellee.
Nos. 4-86-0215, 4-86-0844, 4-86-0285 and 4-86-0967.
District Court of Appeal of Florida, Fourth District.
February 10, 1988.
On Rehearing May 18, 1988.
*673 Marguerite H. Davis and James E. Alderman of Swann and Haddock, P.A., Tallahassee, for Florida Patient's Compensation Fund.
Melanie G. May of Bunnell, Denman & Woulfe, P.A., Fort Lauderdale, for Robert B. Smith, M.D.
Edward E. Perse of Horton, Perse & Ginsberg, and Hoppe & Backmeyer, Miami, for Harriet R. Sitomer.
DOWNEY, Judge.
Appellee, Harriet Sitomer (Sitomer), sued appellant, Dr. Robert Smith (Smith) and Florida Patient's Compensation Fund (the Fund) for medical malpractice. From a jury verdict and judgment for Sitomer and an award of attorney's fees and costs assessed against them, Smith and the Fund have perfected these consolidated appeals.
Sitomer sought the advice of her doctor, Smith, a cosmetic surgeon, after she discovered a lump in her breast. The lump proved to be benign; however, Sitomer had a history of breast cancer in her family, so it was decided she should have a bilateral subcutaneous mastectomy. This procedure involves the removal of breast tissue and the replacement of it with an implant. When Sitomer was discharged from the hospital on June 16, 1981, she noticed that her breasts, which had been swollen and discolored, had turned black and the skin was crusty and blistering. The condition worsened and she inquired of Smith whether the implants were being rejected. He assured her that was not the case; that she did not have any infection, and he told her not to worry about it. Smith says he recommended that she return to the hospital and have immediate surgery to replace the implants. When things did not improve and skin loss continued until the implants became exposed, Smith performed emergency surgery for the removal of the implants. Thereafter, Smith performed further surgery and inserted new implants beneath the muscle rather than between the muscle and skin. Sitomer progressed well and no further complications ensued. However, by then Sitomer had significant scarring due to loss of skin tissue from the original procedure. Sitomer believed this would be rectified eventually but was told by Smith in December, 1982, that nothing could be done about the extensive scarring. Sitomer then sought a second opinion and learned of the alleged negligence involved in the original procedure.
The first two points for our consideration are presented by the Fund. It suggests that error occurred 1) in the trial court's failure to grant a directed verdict in favor of the Fund based upon the two-year statute of limitations contained in section 95.11(4)(b), Florida Statutes (1981), and 2) in giving an erroneous instruction to the jury regarding the statute of limitations in a medical malpractice case and including question number three in the special jury verdict form.
Section 95.11(4)(b), Florida Statutes (1981), provides that an action for medical malpractice shall be commenced within two years of the time the incident giving rise to the action occurred or within two years from the time the incident is discovered, or should have been discovered in the exercise of due diligence. This action against Smith was timely filed within the two-year period; however, the Fund was not joined as a party until later and it claimed that the statute had run vis-a-vis the claim against it. The Fund argued that Sitomer should have known of the alleged negligence, or at least the injury, not later than July, 1981, when the emergency surgical procedure was performed to remove the exposed implants, because Smith testified he had advised her early on of her condition and that she should have additional surgery to correct the condition. On the contrary, Sitomer testified that Smith kept reassuring her everything was all right until the implants became exposed and she submitted to the emergency surgery. Even then she had complete confidence in Smith and remained his patient for another seventeen months during which time she underwent the second implant surgery. Her testimony indicated that she was not aware that her legal rights had been invaded until she sought a second opinion because Smith had advised her there was nothing that could be done *674 about the extensive scarring that had resulted.
We fail to find any error in the submission of the statute of limitations issue to the jury. There was a substantial question of fact regarding the extent and the timing of notice to Sitomer of the injury and its cause with regard to when the statute of limitations was triggered. As the court said in Florida Patient's Compensation Fund v. Tillman, 453 So.2d 1376, 1380 (Fla. 4th DCA 1984), modified, 487 So.2d 1032 (1986): "Where there is a question as to notice or discovery in a medical malpractice action, it is for the jury to decide when the statute of limitations begins to run."
Adverting to the second question presented, it is contended that the trial court improperly instructed the jury on the controlling law regarding the statute of limitations in a medical malpractice case and in posing an inaccurate and misleading question on the jury verdict form. The instruction complained of stated:
On the defense of the Florida Compensation Fund, they have raised the defense that the Plaintiff failed to commence her action within two years of the date the Plaintiff discovered or should have discovered the incident giving rise to this action. The parties have stipulated that this action was commenced against the Florida Patient's Compensation on December 26, 1984. Therefore, in order for the Florida Patient's Compensation Fund to prevail on their affirmative defense, they must prove by the greater weight of the evidence that the Plaintiff discovered or should have discovered the incident giving rise to this action on or before December 26, 1982.
To discover an incident the Plaintiff either must have discovered or should have discovered three things They are: One, that a medical procedure was performed. Two, that the medical procedure was negligently performed. Three, that the Plaintiff suffered an injury as a result.
We do not find reversible error in the foregoing instruction. It is consistent with the current case law because the three requirements listed are prefaced by the phrase stating that "the Plaintiff either must have discovered or should have discovered" those things. The Fund relies on Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976), in arguing that the instruction was erroneous because it required the jury to decide only when the plaintiff knew or should have known of the negligence of the doctor. The Fund submits that the instruction should have reflected that the statute of limitations begins to run when the plaintiff has notice or should have had notice of either the negligent act or the injury. It submits that the injury in this case would have been on the date the emergency surgery was performed, July 16, 1981. However, in Schafer v. Lehrer, 476 So.2d 781 (Fla. 4th DCA 1985), this court held that knowledge of a physical injury alone, without knowledge that the injury resulted from a negligent act, does not trigger the limitations period. While the plaintiff may not have actual knowledge of the negligence, if the plaintiff should have known that the injury was caused by tortious conduct, through constructive notice, then the limitations period begins to run. See Humber v. Ross, 509 So.2d 356 (Fla. 4th DCA 1987). Thus, the statute of limitations in a medical malpractice case begins to run when the plaintiff has been put on notice of an invasion of his legal rights, which occurs when the plaintiff has notice of either the negligent act giving rise to the cause of action, or the existence of an injury that is the consequence of the negligent act. Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976); Wilhelm v. Traynor, 434 So.2d 1011 (Fla. 5th DCA 1983), rev. denied, 444 So.2d 418 (1984); Almengor v. Dade County, 359 So.2d 892 (Fla. 3d DCA 1978). It must be remembered, however, that knowledge of an injury, without more, does not necessarily put a patient on notice that the injury was caused by the negligence of another. It would have been erroneous for the trial court to instruct the jury that knowledge of the injury alone, without knowledge (actual or constructive) that it was caused by a negligent medical procedure, would have been sufficient to trigger the limitations *675 period. The instruction that was given more closely reflects the elements necessary to demonstrate discovery of an incident that would give rise to an action sufficient to trigger the limitations period.
Question number three on the jury verdict form, which the Fund also complains of, states:
3. When should Mrs. Sitomer have discovered that she was injured by the negligence of Dr. Smith?
____ a. before 12/26/82
____ b. On or after 12/26/82.
We find that this question was appropriate because, in order to prevail on the affirmative defense, the Fund had to show by the greater weight of the evidence that Sitomer discovered or should have discovered the incident giving rise to this action more than two years before she brought suit against the Fund. The record indicates that it was clearly a question of fact as to when Sitomer should have discovered that she had sustained an injury that was the result of malpractice. While the Fund argued that Sitomer should have known that negligence had occurred at the time the emergency surgical procedure was performed to remove the exposed implants, rather than after the scarring occurred and she actually learned through a second opinion that negligence had occurred, there was no error in the instruction or the question presented to the jury, the jury simply did not agree with the Fund. Since there was conflicting evidence as to when Sitomer should have discovered that she suffered an injury that was the result of negligence, and there was some evidence to support the jury's verdict, we cannot say that the jury's findings thereon were against the manifest weight of the evidence. Thus, the judgment against the Fund must be affirmed on these points.
The final two points in the main appeal involve the failure to grant a remittitur or new trial, and failure to give appellant's requested instruction on the informed consent statute. We have carefully considered both of these points and find no reversible error. The jury verdict was a considerable one, but the medical negligence and injury presented to the jury was also considerable and caused substantial damage to the plaintiff. Furthermore, though the instruction given by the court on implied consent may be inadequate, Smith and the Fund cannot avail themselves of such error because two theories of negligence went to the jury in this case and the jury found liability against Smith on both charges i.e., negligence in his medical care and treatment and negligence in obtaining Sitomer's informed consent. This record fully supports the verdict vis-a-vis the negligent medical treatment. The "two issue rule," as it is known, provides that, where a case goes to the jury on two theories and the evidence supports one of such theories, the verdict should be affirmed. Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla. 1978); Tiny's Liquors, Inc. v. Davis, 353 So.2d 168 (Fla. 3d DCA 1977); Moore v. St. Cloud Utilities, 337 So.2d 982 (Fla. 4th DCA 1976), cert. denied, 337 So.2d 809 (1976).
Smith and the Fund next present a series of five points pertaining to the allowance of attorney's fees to Sitomer and their assessment against Smith and the Fund or either of them. Appellants contend the trial court erred in denying their motion to dismiss Sitomer's claim for attorney's fees because Sitomer had not alleged compliance with section 768.56 in that there was no allegation that counsel had informed Sitomer of the provisions of section 768.56 and her potential liability for attorney's fees. Sitomer responds by pointing out that, instead of amending by interlineation to allege such in the complaint, she filed an affidavit in the cause in which she stated that counsel had fully advised her in accordance with the above-mentioned section. We agree with the trial judge's rejection of the motion to dismiss under these circumstances.
Since the briefs were filed herein, the Supreme Court of Florida reviewed the conflicting cases of Florida Patient's Compensation Fund v. Maurer, 493 So.2d 510 (Fla. 2d DCA 1986), and Bouchoc v. Peterson, 490 So.2d 132 (Fla. 3d DCA 1986). In Florida Patient's Compensation *676 Fund v. Bouchoc, 514 So.2d 52 (Fla. 1987), the court affirmed Bouchoc and quashed Maurer in part, the essential holding, as it pertains here, being that the Fund is liable for the prevailing party's attorney's fees, which is part of the plaintiff's claim against a health care provider in excess of $100,000. However, that rule does not pertain in the event the plaintiff's attorney's fees are payable under the provisions of the health care provider's underlying coverage, whichever is greater. Thus, in order to resolve the conflict between Smith and the Fund regarding the payment of the attorney's fees, we need to look to the language of Smith's underlying coverage. That policy provides:
The Staff Fund will pay, in addition to the applicable limits of liability: (a) all expenses incurred by the Staff Fund, all costs taxed against the Member in any suit defended by the Staff Fund and all interest on the entire amount of any judgment. .. .
It appears to us that that language is sufficient to include the payment of attorney's fees by Smith's carrier, which would preclude liability therefor by the Fund. In construing a somewhat similar policy the Third District Court of Appeal in Williams v. Spiegel, 512 So.2d 1080, 1081-1082 (Fla. 3d DCA 1987), said:
The policies issued by the defendants' primary insurance carrier provide for benefits "in addition to the limits of [the insured's] coverage," one of which is the carrier's undertaking to "pay all costs of defending a suit." Although "costs" may be specifically defined to exclude attorney's fees, that was not done in these policies. Therefore, we see no reason to ascribe to the term anything other than its generic meaning. Indeed, because our supreme court has expressly held attorney's fees under Section 768.56 to be like any "other costs of proceedings" and a "part of litigation costs," Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1149 (Fla. 1985), there is very good reason why we should accord the term its more inclusive meaning. [footnote omitted].
It, therefore, appears that, since the judgment against the Fund is affirmed, the attorney's fees assessed should be paid by Smith's carrier, after amending the amount thereof, which Sitomer concedes contains an erroneous mathematical calculation. The amount of the fees determined by the trial court should have been $398,317.
Accordingly, the judgment against Smith in favor of Sitomer for liability and damages is affirmed to the extent recoverable under the statute, i.e., $100,000 plus assessable attorney's fees. The judgment for Sitomer against the Fund is affirmed on the question of the applicability of the statute of limitations. The order providing for the recovery of attorney's fees by Sitomer is affirmed except that the amount thereof is modified to $393,317. The order assessing attorney's fees for Sitomer against the Fund is reversed and remanded with directions to assess the allowance of attorney's fees for Sitomer against Smith and his insurance carrier.
AFFIRMED in part; REVERSED in part, and REMANDED with directions.
HERSEY, C.J., and STONE, J., concur.

ON REHEARING
The petitions for rehearing filed by appellant, Robert B. Smith, M.D., and appellant/appellee, Florida Patient's Compensation Fund, point out that this court's opinion of February 10, 1988, affirmed the attorney's fees for appellee, Sitomer, but modified the amount to $393,317, whereas the amount should have been $398,317. Said petitions are granted to the extent that the opinion of February 10, 1988, is corrected to provide for said attorney's fees in the amount of $398,317. In all other respects the petitions for rehearing are denied.