545 So.2d 1360 (1989)
Firth S. SPIEGEL, M.D., Petitioner,
v.
Bud Pratt WILLIAMS, Respondent.
No. 71338.
Supreme Court of Florida.
July 6, 1989.
*1361 Shelley H. Leinicke of Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane, Fort Lauderdale, for petitioner.
Larry S. Stewart of Stewart, Tilghman, Fox & Bianchi, P.A., and James C. Blecke, Miami, for respondent.
Richard A. Sherman of the Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, amicus curiae for Florida Medical Malpractice Joint Underwriters Ass'n.
Joe N. Unger of the Law Offices of Joe N. Unger, P.A., Miami, amicus curiae for Florida Patient's Compensation Fund.
GRIMES, Justice.
We have for review Williams v. Spiegel, 512 So.2d 1080 (Fla. 3d DCA 1987), which conflicts with State ex rel. Royal Insurance Co. v. Barrs, 87 Fla. 168, 99 So. 668 (1924), and Prudential Insurance Co. of America v. Lamm, 218 So.2d 219 (Fla. 3d DCA), cert. denied, 225 So.2d 529 (1969). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Respondent Williams was the prevailing party in a medical malpractice action. His posttrial judgment entered pursuant to section 768.54(2)(b), Florida Statutes (1981), limited the liability of the defendant doctors, Spiegel and Ebken, and their professional association, Spiegel and Ebken, P.A., to $300,000 ($100,000 each) which was paid to Williams by defendants' insurer, St. Paul Fire and Marine Insurance Company. Williams appealed the judgment to the district court of appeal, contending that St. Paul should also be liable for the payment of attorneys' fees in the amount of $206,000 awarded to him pursuant to section 768.56, Florida Statutes (1981). The district court of appeal concluded that the plaintiff's attorneys' fees constituted costs covered by St. Paul's policy and reversed the trial court on this point.
In Florida Patient's Compensation Fund v. Bouchoc, 514 So.2d 52 (Fla. 1987), this Court decided the question of whether attorneys' fees awarded to the plaintiff under section 768.56, Florida Statutes (1981), should be paid by the Fund or by the health care providers. We held that the Fund was obligated to pay unless the plaintiff's attorneys' fees were payable under the provisions of the health care provider's liability insurance coverage. The instant case involves the determination of whether the health care provider's liability policy covered the payment of the plaintiff's attorneys' fees.
The argument is made that the attorneys' fees are payable under the following language of St. Paul's insurance policy:
We'll pay all costs of defending a suit, including interest on that part of any judgment that doesn't exceed the limit of your coverage.
We do not see how the statutory award of plaintiff's attorneys' fees can be construed to be a cost of defending a suit.
While a policy could no doubt be written specifically to cover court-awarded attorneys' fees, liability insurers are normally only responsible for the payment of the plaintiff's attorneys' fees where bad faith is involved or the insured prevails in a direct action against the company. 8A J. Appleman, Insurance Law and Practice § 4894.65 (1981); § 627.428, Fla. Stat. (1987). On the other hand, liability insurers have usually been responsible for the payment of taxable costs over and above the policy limits. 8A J. Appleman, Insurance Law and Practice § 4894 (1981); 15A M. Rhodes, Couch Cyclopedia of Insurance Law §§ 56:10, 56:16 (rev. ed. 1983). Therefore, the result reached by the district court of appeal would be justified if the award of the plaintiff's attorneys' fees could be considered as a species of taxable *1362 costs. Yet, ever since this Court's decision in State ex rel. Royal Insurance Co. v. Barrs, 87 Fla. 168, 99 So. 668 (1924), attorneys' fees recoverable by statute are regarded as "costs" only when specified as such by the statute which authorizes their recovery. Accord Prudential Ins. Co. of America v. Lamm, 218 So.2d 219 (Fla. 3d DCA), cert. denied, 225 So.2d 529 (1969). Indeed, there are some statutes which provide for an award of attorneys' fees to be taxed as costs. E.g., § 713.29, Fla. Stat. (1987). However, section 768.56, Florida Statutes (1981), did not specify that attorneys' fees could be taxed as costs.
The dissent adopts a position that was not relied upon by the district court of appeal. We cannot accept the reasoning that because St. Paul agreed to pay the costs of defense, including interest on any judgment, and that because interest is not a cost of defense, this somehow means that St. Paul agreed to pay the plaintiff's attorneys' fees which is also not a cost of defense. It is beyond dispute that if a policy is reasonably susceptible to more than one meaning, it should be construed against the insurance company. However, contracts of insurance should also be construed to give effect to the intent of the parties, and the principle of strict construction should not be extended to add a meaning to language that is clear. Rigel v. National Casualty Co., 76 So.2d 285 (Fla. 1954). The language of this policy is clear. The dissent seems to concede that the plaintiff's attorneys' fees do not fall within the words "costs of defending a suit," standing alone. The fact that the policy mischaracterizes interest as a cost of defense does not make any less clear the obligations of the insurance company. The policy requires it to pay the costs of defending a suit as well as specified portions of interest on any judgment  nothing more, nothing less. It does not cover the payment of the plaintiff's attorneys' fees.
We quash the opinion of the district court of appeal.
It is so ordered.
OVERTON, McDONALD, SHAW and KOGAN, JJ., concur.
EHRLICH, C.J., dissents with an opinion, in which BARKETT, J., concurs.
EHRLICH, Chief Justice, dissenting.
The policy phrase "all costs of defending a suit" surely can not be limited to a successful defense. From the perspective of the policyholder, he is seeking to be insulated from the costs attendant to both a successful and an unsuccessful defense. He expects the insurer to pay such costs, even if the defense undertaken by the insurer is unsuccessful. That this is the intent of the insurer also seems to be borne out by the policy language itself and by the fact that St. Paul failed to expressly limit its liability in this area.
The policy contains the following recitation of "additional benefits" which "are in addition to the limits of ... coverage" under the policy:
We'll defend any suit brought against you for damages covered under this agreement. We'll do this even if the suit is groundless or fraudulent. We have the right to investigate, negotiate and settle any suit or claim if we think that's appropriate.
We'll pay all costs of defending a suit, including interest on that part of any judgment that doesn't exceed the limit of your coverage. But we won't defend a suit or pay any claim after the applicable limit of your coverage has been used up paying judgments or settlements.
We'll also pay premiums for appeal bonds or to release property that's being used to secure a legal obligation. We'll pay premiums for bonds valued up to the limit of your coverage. And we'll pay all reasonable costs you incur at our request while helping us investigate or defend a claim or suit against you. This includes earnings you lose after we ask you to help us  up to $200 a day.
(Emphasis added.) The policy language at issue lends itself to a far broader construction than that urged by St. Paul. As I construe the phrase, "all costs of defending *1363 a suit" includes both traditional defense costs and all costs incurred in unsuccessfully defending a suit.
Under the policy, St. Paul agreed to pay "all costs of defending a suit, including interest on that part of the judgment which doesn't exceed the limit of your coverage." By using the words "including interest" after the phrase "we'll pay all costs of defending a suit," the policy equates judgment interest with "all costs of defending a suit." While judgment interest is an obligation of an unsuccessful defendant, it is not considered one of those traditional costs which is incurred in the defense of a suit. Judgment interest, like an award of attorneys' fees under section 768.56, is a cost or an obligation, which only arises if the defense of the suit is unsuccessful. St. Paul puts this cost of an unsuccessful defense in the same pigeon hole or category as "costs of defending a suit" for which it will be responsible. If the provision at issue had contained the word "and" or "plus" instead of "including," I could agree that under the policy judgment interest is considered something other than a cost of defending a suit.
The majority becomes an apologist for St. Paul's choice of language when it patronizingly says that "the policy mischaracterizes interest as a cost of defense." Maj. op. at 1362. We must assume that St. Paul knew what it was doing when it placed judgment interest within the umbrella of "all costs of defending a suit." By so doing St. Paul gave the phrase in question an expansive meaning. It should not be heard to say now that its liability is limited to "defense costs" normally incurred during a successful defense, plus a portion of judgment interest in the case of an unsuccessful defense. Such a construction may be well and good from the standpoint of the insurance company that drafted the policy, but it is unfair to the policyholder.
The policy expressly reserves to St. Paul the right to settle any suit if it thinks that is appropriate. If the suit is not settled and is tried unsuccessfully, there is imposed on the defendant, pursuant to section 768.56, an attorneys' fee for plaintiff's attorney. St. Paul is charged with knowledge of Florida law at the time the policy in question was issued. St. Paul cannot say that it was unaware of the fact that a successful plaintiff in a medical malpractice suit is entitled to recover from the defendant, in addition to taxable costs and the judgment plus interest, a reasonable attorneys' fee. St. Paul, as the scrivener of the policy, could have easily excluded plaintiff's attorneys' fees from its obligation under the policy. How easy and clear it would have been for St. Paul to have expressly stated that "in addition to our limit of liability, we will pay all defense costs we incur" or "defense costs are limited to fees charged by an attorney we designate." However, nowhere in the policy does St. Paul seek to define the provision at issue.
St. Paul has amply demonstrated that it is well versed in limiting its liability. It expressly limits its duty to defend a suit or pay any claim so long as its coverage has not been exhausted. It limits its liability for judgment interest to that portion of the judgment which doesn't exceed the limits of coverage. However, the phrase "we'll pay all costs of defending a suit" is not limited to those costs incident to a successful defense. Obviously where the prevailing plaintiff in a medical malpractice suit is entitled to a reasonable attorneys' fee, the costs of defending the suit unsuccessfully are increased. If the insurer wishes to limit its obligation for the payment of plaintiff's attorney, should it not be required to say so unambiguously? Can it come in now and say that if it is unsuccessful, it is not obligated to pay the statutory attorneys' fee? The policyholder who had no control over the language used in the policy and who had no control over whether the suit was settled or tried should not be left to swing in the wind for the payment of the statutory attorneys' fee, when the policy is susceptible to being construed to cover those costs.
As the majority concedes, "if a policy is reasonably susceptible to more than one meaning, it should be construed against the insurance company." Maj. op. at 1362. At the very least, the policy is susceptible to the construction that is quite obvious to *1364 me. The insured is entitled to the benefit of that construction. Although my reasoning may differ from that of the district court of appeal, I agree with the result reached by it. It is entirely consistent with elemental fairness and justice and should be approved.