CATHERINE CORDEIRO, as Personal Representative of the Estate of William J. Perreira, deceased, and as Prochein Ami of WILLIAM PERREIRA, JR. and JOSEPH PERREIRA, minors, Plaintiff-Appellant, *v.* SIDNEY G. BURNS, COUNTY OF MAUI, and STATE OF HAWAII, Defendants-Appellees, and JOHN DOES 1-10, Defendants

NO. 13217

(CIVIL NO. 86-0474(2) )

MAY 5, 1989

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

This is an appeal from a summary judgment granted to defendants-appellees State of Hawaii (State) and County of Maui (County) in a wrongful death action arising from an automobile accident. Plaintiff-appellant Catherine Cordeiro (Appellant), as personal representative of the estate of decedent William J. Perreira (Perreira) and as *prochein ami* of decedent's minor children, William Perreira, Jr. and Joseph Perreira, contends that the lower court erred in granting the State a summary judgment because (1) issues relating to negligence and proximate cause are not appropriate for summary adjudication and (2) there are genuine issues of material fact concerning the cause of the accident which resulted in Perreira's death. Appellant also contends that the lower court improperly rendered a summary judgment in the County's favor because "the County did not seek relief, but merely joined in the . . . State's Motion for Summary Judgment which only sought relief for State." We affirm.

I.

The following facts are not in dispute. On September 29, 1984, at approximately 10:00 p.m., a jeep owned and driven by defendant Sidney G. Burns (Burns), in which Perreira was a passenger, crossed the centerline on West Kuiaha Road (Road) in Maui County and collided with an oncoming vehicle driven by Lourdes Felipe (Felipe). At the time of the accident, which "occurred under cloudy weather conditions, on a wet roadway surface and in an area where there existed no street lights[,]" Record at 797, Burns' jeep was descending a "downhill grade on a curve[,]" *id.* and traveling in

a makai[1] direction "at about 30 Miles Per Hour." *Id.* at 781. The accident occurred on a State-owned portion of the Road. As a result of the collision, Perreira was thrown from the jeep, sustained serious bodily injuries, and died soon thereafter.

Both Burns and Perreira had been drinking beer for a period of approximately eight consecutive hours prior to the accident. Burns was arrested for driving under the influence of intoxicating liquor and subsequently charged with and convicted of negligent homicide in the first degree. A blood test administered to Burns indicated a blood alcohol concentration (BAC) of 0.28 percent.[2] Perreira's BAC was 0.20 percent.

On September 17, 1986, Appellant filed an amended complaint alleging gross negligence on the part of Burns and negligence on the part of the State and the County. With respect to the State and the County, Appellant specifically alleged that both had "designed, constructed, owned, operated and maintained West Kuiaha Road . . . in a negligent and careless manner." *Id.* at 14.

On March 29, 1988, the State filed a motion for summary judgment claiming that "the State's alleged negligence has no causal connection with the accident and, therefore, is not the proximate cause of Plaintiff's claimed damages." *Id.* at 574. On April 12, 1988, the County filed a "joinder" in the State's motion for summary judgment.

On April 28, 1988, the lower court entered its order granting summary judgment to the State and the County. Appellant thereafter moved for reconsideration, which was denied on July 12, 1988. After the summary judgment was certified as to its finality pursuant to Hawaii Rules of Civil Procedure (HRCP) Rule 54(b), Appellant timely appealed.

---

[1] The Hawaiian word "makai" means ocean, as contrasted to the word "mauka" which means inland. M. Pukui & S. Elbert, Hawaiian Dictionary 225, 242 (Rev. ed. 1986).

[2] Hawaii Revised Statutes § 291-4(a) (2) (1985) provides:

    (a) A person commits the offense of driving under the influence of intoxicating liquor if:

*   *   *

    (2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

## II.

We agree with Appellant that issues of "negligence and proximate cause are ordinarily not susceptible to summary adjudication." *De Los Santos v. State,* 65 Haw. 608, 610, 655 P.2d 869, 871 (1982). However, "where the facts are undisputed or are susceptible of only one reasonable interpretation, the trial court is under a duty to pass upon the question of negligence or proximate cause as a matter of law." *Id.* at 610-11, 655 P.2d at 871 (citations omitted).

Upon a review of the record in this case, we hold that the facts presented to the lower court are susceptible of only one reasonable interpretation — that Burns' negligence was the sole proximate cause of the accident resulting in Perreira's death. Accordingly, the lower court properly granted the State's motion for summary judgment as a matter of law.

### A.

Relying on the affidavit of Harry Krueper (Krueper), an accident reconstruction expert, Appellant argues that there is a genuine issue of material fact as to whether the State's conduct was "a legal cause of the accident." Krueper stated in his affidavit that the accident occurred on a section of the Road where "a reverse type curve exists on [a] relatively steep [downgrade,]" and that "Mr. Burns was descending downgrade after cresting the hill [which underlies the downgrade] and at the same time, negotiating a left curve[.]" Record at 798. Krueper further stated that

one of the key factors in this particular incident is that when a vertical curve hides a horizontal curve over the crest of a hill *and one is not prepared* for the horizontal curve and crests the vertical curve, suddenly to find the roadway turning away from him, there often times occurs a very sudden reaction on the driver's part to over compensate for the sudden change in roadway alignment, thus, throwing the vehicle into the opposing lane.

*Id.* (emphasis added). He opined "that this would have been a very reasonable type of explanation as to what occurred in this particular accident[.]" *Id.* He further opined that the proximate cause of the accident was the absence of any advisory signs relating to "the

reverse curve situation" and the applicable speed limit,[3] which would have been an "effective method of pointing out to [Burns] the conditions of the roadway." *Id.* at 798-99.

On the other hand, relying heavily on the deposition testimony of Burns,[4] the State contends that, based on the circumstances in this case, the absence of any advisory signs had no causal connection to the accident and that Burns' negligence was the sole proximate cause of the accident. At his deposition, Burns testified that he was familiar with the Road because he had used the Road three to five times a week over a time period spanning "four to five years before the date of the accident[.]" *Id.* at 605. He also stated that he had driven on the Road at "nighttime" and "under all kinds of weather conditions[.]" *Id.* at 606. Moreover, Burns acknowledged that he was aware of his whereabouts immediately before the accident occurred — he knew he was "coming down that hill." *Id.* at 672-73.

During his deposition, Burns, speaking from personal knowledge, disclosed his version of the true cause of the accident. He revealed that immediately prior to the accident, Perreira, after relating his concerns regarding personal family problems to Burns, threatened to jump from the jeep.[5] In order to prevent Perreira from carrying out his threat, Burns "[t]urned to him and just grabbed him" with his (Burns') right hand. *Id.* at 676. Burns stated that as a result of his attempt to restrain Perreira, he diverted his attention from the Road and never saw the oncoming Felipe vehicle. *Id.* at 677.

Finally, Burns related that on the day of the accident he experienced an alignment problem with his jeep — "the front wheel was

---

[3] Robert Siarot, the Maui District Engineer for the Highways Division of the State Department of Transportation, stated in his Affidavit that "[t]here is a 20 mph speed limit sign posted on the County-owned portion of West Kuiaha Road, .8 mile mauka of the site of the accident[.]" Record at 730.

[4] Sidney Burns (Burns) was deposed on February 26, 1988, while Henry Krueper's (Krueper) affidavit is dated April 11, 1988. However, at the hearing on the motion for summary judgment, counsel for plaintiff-appellant Catherine Cordeiro (Appellant) informed the court that Krueper was not familiar with Burns' deposition testimony. April 13, 1988 Transcript at 22.

[5] The record indicates that the jeep had no doors or seat belts.

pulling to the left." *Id.* at 649. He expressed his belief that such problem was "the reason [he] ended up hitting [the Felipe] car in the [oncoming] lane[.]" *Id.* at 651.

In support of its contention, the State cites *De Los Santos, supra,* and *Wiegand v. Colbert,* 68 Haw. 472, 718 P.2d 1080 (1986). As in this case, *De Los Santos* involved an automobile accident. In *De Los Santos,* the plaintiffs were injured when their car was struck in an intersection by a vehicle that had run a stop sign and was driven by the third-party defendant. The third-party defendant indicated that he (1) was traveling at a speed of about 50-55 miles per hour on a stretch of a highway where the posted speed limit was 35 miles per hour, (2) was reaching down for a nasal spray applicator on the floor of his car, and (3) saw the stop sign when he was approximately twelve feet away from it. The plaintiffs sued the State of Hawaii (State) and the City and County of Honolulu (City), alleging that the State and City were "negligent in supervising, maintaining and controlling the site of the accident[.]" *De Los Santos,* 65 Haw. at 608, 655 P.2d at 870. The trial court granted the State's and the City's motions for summary judgment, ruling that the "[third-party defendant's] negligence was the sole proximate cause of the accident as a matter of law." *Id.* at 610, 655 P.2d at 871. On appeal, the plaintiffs argued that "the State was negligent for using a stop sign instead of traffic lights at the intersection." *Id.* They further argued that "the City should have posted signs warning motorists of the approaching intersection." *Id.* The supreme court disagreed, noting that the third-party defendant ran the stop sign because of his own recklessness and inattentiveness, and, therefore, "no reasonable inference [could] be drawn . . . that any act or omission on the part of the State and of the City could have materially contributed to the accident." *Id.* Accordingly, the grants of summary judgment were affirmed.

Although *Wiegand* involved the granting of a directed verdict, rather than a summary judgment, its operative facts with respect to causation are substantially similar to those in this case. *Wiegand* involved an automobile accident in which a pedestrian was struck and killed while walking in a crosswalk. A wrongful death action was commenced against the driver (Driver) of the automobile and the City and County of Honolulu (City). The City's alleged negligence was grounded on its breach of duty to warn motorists of the

crosswalk because it had permitted the crosswalk markings "to become so faded, as to be virtually invisible to an approaching motorist." 68 Haw. at 476, 718 P.2d at 1083. At the close of all the evidence, the trial court granted a directed verdict on the issue of liability in favor of the City.[6] On appeal, the supreme court noted that the Driver testified at trial that at the time of the accident "it was absolutely clear in her own mind . . . that there was a crosswalk" at the accident site and that "on many previous occasions she had stopped there for [pedestrians]." *Id.* Given such testimony, the court stated that "there was nothing in the record to suggest that a brightly painted crosswalk would have affected [the Driver's] conduct[,]" and, therefore, there was no "causal connection between failing to repaint the crosswalk and the accident." *Id.* at 476, 718 P.2d at 1084. Accordingly, the court found no error in the granting of the directed verdict.

In the case at hand, Krueper's opinion as to how the accident occurred is theoretically plausible. However, such opinion regarding causation is entirely discounted by Burns' account of the circumstances attending the accident. The record indicates that Burns was totally familiar with the area where the accident occurred; he was aware of the fact that he was "coming down that hill" before the curve; he was driving at an excessive rate of speed for that stretch of the Road; he was intoxicated; he was inattentive to his driving while attempting to restrain Perreira from jumping out of the jeep; and the jeep's wheel alignment was faulty. In light of these attendant circumstances, we hold that there was no causal connection between the State's failure to post advisory signs relating to the "reverse curve situation" and the applicable speed limit and the fatal accident.

### B.

Additionally, Appellant questions the credibility of Burns' deposition testimony, claiming that it is "self-serving" and conflicts

---

[6] In *Wiegand v. Colbert*, 68 Haw. 472, 718 P.2d 1080 (1986), the City and County of Honolulu (City) settled the case with the plaintiffs, and was not represented at the trial. At the close of all the evidence, the plaintiffs moved for a directed verdict on the issue of liability in favor of the City.

with statements he made to the police on the date of the accident. Appellant therefore urges that the credibility issue should have precluded summary judgment in this case. We disagree.

It is well established that under HRCP Rule 56(c), "mere suspicion that an affiant [or a deponent] may be lying does not create a genuine issue of material fact sufficient to preclude summary judgment[.]" *Haase v. Webster,* 807 F.2d 208, 212 (D.C. Cir. 1986). We have stated that

> a party opposing the motion for summary judgment must be able to point to some facts which refute the proof of the movant in some material portion and "not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." The non-moving party must come forward with some evidentiary matters to support its position. By failing to present any specific evidence of discrepancies or contradiction among [the deponent's] statements, [the non-moving party] has failed to raise any genuine issue of material fact.

*Costa v. Able Distributors, Inc.,* 3 Haw. App. 486, 489, 653 P.2d 101, 104 (1982) (citations omitted).

Our review of the record indicates that Appellant has failed to raise a valid credibility issue in this case. To begin with, Burns' testimony is not self-serving. As the State correctly maintains, "Burns' testimony is *not* in his best interest[ ]" since "[i]t tends to absolve the State and/or County of liability for Perreira's death, thereby undermining Burns' crossclaims against them as joint tortfeasors." Indeed, Burns joined in Appellant's opposition to the State's motion for summary judgment.

Furthermore, there is no contradiction between Burns' account of the accident given at his deposition and the statements he gave to the police immediately after the accident. When questioned by the police at the accident scene, Burns stated that "he was unable to recall why the accident had happened." Record at 781. He added that his only recollection of the accident was "an impact" when his jeep crashed into the Felipe vehicle. *Id.* At the deposition, however, Burns explained his failure to previously disclose the true circumstances attending the accident. He emotionally and tearfully admitted that he had not told anyone, except some close friends, that

Perreira had attempted suicide because he didn't want Perreira's parents "to find out what really happened[.]" *Id.* at 657. Moreover, Burns' account of the accident is consistent with the account given by Felipe at her deposition:

> [T]hey come down, and I go up. And I see them straight yet. All sudden he come to my lane.

*Id.* at 690. In our view, in light of the foregoing, there is no discrepancy or conflict between Burns' deposition testimony and the statement he gave to the police at the time of the accident when he was intoxicated and probably highly traumatized by the tragic incident.

Appellant's reliance on *Jacoby v. Kaiser Foundation Hospital,* 1 Haw. App. 519, 622 P.2d 613 (1981) is misplaced. In *Jacoby,* the plaintiff, a non-moving party in a summary judgment motion, refuted the defendant-movant's statute of limitations defense by an affidavit stating that she did not discover the movant's breach of duty and the causal connection between such breach and her injuries until a certain date which was within the limitations period. Her testimony thereby properly raised a credibility issue for the jury regarding the limitations defense.

## III.

Finally, Appellant challenges the propriety of the summary judgment in the County's favor because the County merely filed a joinder in the State's motion for summary judgment and failed to file its own motion. This challenge is without merit.

In essence, Appellant's challenge raises the issue of whether a circuit court may grant summary judgment to a non-moving party. In *Flint v. MacKenzie,* 53 Haw. 672, 501 P.2d 357 (1972), the supreme court stated that "the great weight of authority answers in the affirmative." *See also* 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 56.12 (2d ed. 1988). The court held that the circuit court should enter a summary judgment in favor of a non-moving "prevailing party" where there is no genuine issue as to any material fact, reasoning that the purpose of summary judgment to expedite matters "should not be thwarted because one

party has not fulfilled the mechanical procedures normally required." *Flint,* at 672-73, 501 P.2d at 357.

Here, the lower court granted summary judgment to both the State and the County as a matter of law because it was Burns' negligence, and not the alleged negligence of the State or the County, which was the sole cause of the fatal accident. Furthermore, the record clearly indicates that Appellant had sufficient notice of the County's intent to seek summary judgment, as well as an adequate opportunity to persuade the lower court that summary judgment should not be granted to the County.[7]

Accordingly, the lower court properly granted a summary judgment in the County's favor, notwithstanding the failure of the County to "fulfill the mechanical procedures normally required."

We therefore affirm the summary judgment in favor of both the State and the County.

*James Geiger (Richard L. Rost* and *Al Albrechtson* on the briefs; *Richard L. Rost,* Attorney at Law, A Law Corporation, of counsel) for plaintiff-appellant.

*Norma DeSantis Titcomb (Laurence K. Lau* with her on the brief), Deputy Attorneys General, for defendant-appellee State of Hawaii.

*Peter A. Rader,* Deputy Corporation Counsel, for defendant-appellee County of Maui.

---

[7] At the hearing on Appellant's motion for reconsideration, Appellant had a full opportunity to address the issue of whether the County of Maui was entitled to a summary judgment.