129 P.3d 504

Walter Y. ARAKAKI, General Contractor, Inc., a Hawai'i corporation, Plaintiff–Appellee,

v.

SCD–OLANANI CORPORATION, a Hawai'i corporation, and Stanford S. Carr, Defendants–Appellants,

and

Stephen H. Swift, Defendant–Appellee.

GE Capital Hawaii, Inc., a Hawai'i corporation, Defendant/Third–Party Appellee,

v.

Stanford S. Carr Development Corporation, a Hawai'i corporation, Third–Party Defendant/Appellant,

and

John Does 1–10, Jane Does 1–10, Doe Partnerships 1–10, Doe Corporations 1–10, Doe Entities 1–10, and Doe Governmental Units 1–10, Defendants.

No. 24789.

Supreme Court of Hawai'i.

Feb. 23, 2006.

As Corrected March 1, 2006.

**2**

Lyle S. Hosoda, Honolulu, on the briefs, for the defendants-appellants SCD–Olanani Corporation and Stanford S. Carr, and the third-party defendant/ appellant Stanford S. Carr Development Corporation.

Stephen W.H.A. Lee, Honolulu, on the briefs, for the plaintiff-appellee Walter Y. Arakaki, General Contractor, Inc.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, AND DUFFY, JJ.

Opinion of the Court by LEVINSON, J.

The defendants-appellants SCD–Olanani Corporation (hereinafter, "SCD") and Stanford S. Carr appeal from the October 4, 2001 judgment of the circuit court for the first circuit, the Honorable Karen Blondin presiding, in favor of the plaintiff-appellee Walter Y. Arakaki, General Contractor, Inc. (hereinafter, "Arakaki") and against SCD and Carr. The third-party defendant/appellant Stanford S. Carr Development Corporation (hereinafter, "Carr Dev. Corp.") appeals from the circuit court's December 5, 2001 order denying the October 12, 2001 motion for reconsideration filed by Carr Dev. Corp., SCD, and Carr (hereinafter, collectively, "the Appellants").

On appeal, the Appellants contend that the circuit court erred in failing to: (1) "consider evidence of [the defendant-appellee Stephen H.] Swift's fraudulent concealment of his wilful and illegal dumping of asbestos and other waste material on [a certain mortgaged property in Kāne'ohe (hereinafter, "]the property[")] prior to, during, and after the sale of the property to [the Appellants] in denying [the] Appellants' motion for reconsideration"; and (2) "find that a mutual mistake as to the value and condition of the [p]roperty existed

at the time that Arakaki settled [its] claims with [the Appellants], justifying rescission of the[ir] settlement agreement." (Emphases omitted.)

For the reasons discussed *infra* in part III.C, we hold that the circuit court erred in granting summary judgment and accordingly vacate the circuit court's October 4, 2001 order and remand for further proceedings.

## I.  BACKGROUND

On June 8, 1999, Arakaki filed its complaint in the circuit court (Civ. No. 99–2261) against, *inter alia*, SCD, Carr, and the defendant/third-party plaintiff/appellee GE Capital Hawaii, Inc. (hereinafter, "GECH"), praying for foreclosure of the property. Swift had apparently assigned to Arakaki a mortgage securing a promissory note under which the Appellants were the obligors.

In November 2000, the Honorable Kevin Chang conducted a settlement conference. On December 21, 2000, SCD and Arakaki settled Arakaki's claim, but the Appellants allegedly failed to make payments in accordance with the settlement agreement. On July 19, 2001, Arakaki moved, pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 56(a), for summary judgment against SCD and Carr and attached affidavits and a purported copy of the settlement agreement. In its motion, Arakaki argued in relevant part:

> There can be no factual dispute that . . . the installment payment due on June 30, 2001 is overdue and owing. There can be no factual dispute concerning the terms of the Settlement Agreement or that the sum of $300,000.00 is overdue and owing.
>
> . . . No payment has been received to satisfy the payment of $300,000.00 which was due on June 30, 2001. The default of [SCD and Carr] is without factual dispute and therefore [Arakaki] is entitled to summary judgment for the balance of $400,000.00. . . .

On August 7, 2001, SCD and Carr filed a "statement of no position regarding [Arakaki]'s motion . . . and statement of non appearance by counsel." (Emphases omitted.)

On August 15, 2001, the circuit court conducted a hearing at which, of the parties, only Arakaki appeared.

The circuit court's October 4, 2001 order granted Arakaki's motion for summary judgment in relevant part, denying only attorney's fees and costs. The circuit court directed that the order "be entered as a final judgment pursuant to [HRCP] Rule 54(b)." On the same day, the circuit court entered final judgment in favor of Arakaki and against SCD–Olanani Corporation and Carr.

On October 12, 2001, the Appellants moved, pursuant to HRCP Rules 59(e) and 60(b),[1] for reconsideration of the circuit court's October 4, 2001 order. The Appellants proffered certain environmental findings as newly discovered evidence, to wit, Clayton Group Services, Inc.'s September 4, 2001 report on its environmental survey of the property, and Geolabs, Inc.'s July 23, 2001 report concerning Geolabs, Inc.'s "supplemental geotechnical engineering exploration ... to obtain an overview of the surface and subsurface conditions at the [property] ... and to confirm the subsurface conditions encountered in the 1995 geotechnical engineering exploration." Geolabs, Inc. concluded that

> there is a distinct change in the nature and character of the fill materials at the [property] between the 1995 field exploration and the current field exploration. The fill materials ... contained a significant amount of deleterious materials that will need to be ... replaced with well-compacted materials in order to construct the proposed residential dwellings on the [property].

In support of its motion for reconsideration, the Appellants argued in relevant part that Clayton Group Services, Inc.'s study

> concludes that Swift knowingly and intentionally dumped and covered up asbestos

and other illegal material on the [p]roperty prior to selling the [p]roperty to SCD. This is the first time that anyone (besides Swift) knew or could have known about such illegal dumping. As such, the study is newly discovered evidence that was not available prior to the [August 15, 2001] hearing on Arakaki's [July 19, 2001] motion.... Arakaki stands in Swift's shoes, and took the [p]roperty subject to the same liabilities and claims as Swift.

> Swift fraudulently and intentionally misrepresented the [p]roperty to SCD in order to induce the sale....

> ....

> Swift had a duty to disclose any and all material facts regarding the [p]roperty except for those contained in the title report. However, [he] breached this duty when he failed to disclose his illegal landfill activity ... involving asbestos containing debris. This asbestos debris places a cloud on title....

> ....

> ... [Swift] knew that he was in violation of ... disposal laws and chose not to inform [the Appellants] of his illegal activity. [The Appellants] had no way of knowing about this. However, even if [the Appellants] knew or should have known that there was illegal dumping ..., this does not negate Swift's obligation to convey title that was free and clear of ... anything that would materially affect the value of the [p]roperty.

> ....

> ... [The Appellants] believed that the [p]roperty was clear of anything which would materially affect [its] value ..., and had no reason to think that the [p]roperty [they] purchased from [their] friend and business associate was not in a condition to be developed for its intended use....

---

1. HRCP Rule 59(e) permits "motion[s] to alter or amend ... judgment." HRCP Rule 60(b) provides in relevant part:

   > On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment[ or] order ... for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to

   move for a new trial under [HRCP] Rule 59(b); (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; ... or (6) any other reason justifying relief from the operation of the judgment.

   HRCP Rule 59(b) provides, in turn, that "[a] motion for a new trial shall be filed no later than 10 days after entry of the judgment."

... [The Appellants'] experience ... in ... real estate development does not absolve Swift from liability for a condition he knew involved unreasonable risk and a strong likelihood of affecting the value of the [p]roperty.

While the principle of caveat emptor dictates that the buyer will assume the risk if he does not inspect or examine at the time of possession, there are exceptions....

....

Furthermore, [the Appellants] ha[ve] not waived [their] right to rescind the [c]ontract on the basis of fraud when [they] only found out about the asbestos problem on September 13, 2001....

(Citation omitted.) At the November 6, 2001 hearing on the Appellants' motion for reconsideration, Carr and Carr Dev. Corp. further argued:

[The] settlement agreement is a contract which can be cancelled in equity upon a determination there's been a mutual mistake.

... [T]here's no question that there was at least a mutual mistake....

The second point ... is that we're talking about fraud here; and every [b]lack letter law, everything that's been cited ... has a fraud exception to it.

... [T]hey've pointed to the settlement agreement and said[ ] ... Carr must have known or should have known that there was a fraud committed; and despite the same, entered into that settlement agreement. Simply not true.

... [W]here there is a fraud, there must be an expressed knowing, intelligent, and voluntary waiver of the fraud.

... If Your Honor looks at that settlement agreement, there's no discussion of any type of dumping, ... no mention of a fraud[.]

....

... A survey was done by [Carr] with his due diligence. At the time the property was conveyed to him in 1995, 1996, it did not show admitted illegal landfill or illegal dumping.

... [T]he only time [sic] that put [Carr] on notice[ ] was the September 4th, 2001 survey ... showing illegal dumping occurred.

... [Carr] wouldn't have entered into this settlement agreement had he known there was illegal dumping on the property.

At the conclusion of the hearing and pursuant to its December 5, 2001 order, the circuit court denied the Appellants' motion for reconsideration. On January 2, 2002, the Appellants filed a timely notice of appeal.

## II. STANDARD OF REVIEW

### Grant Of Summary Judgment

We review the circuit court's grant of summary judgment *de novo*. ...

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Coon v. City & County of Honolulu*, 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002) (brackets in original) (quoting *Hawaii Cmty. Fed. Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000) (citations and internal quotation marks omitted)).

## III. DISCUSSION

### A. The Appellants' Arguments

On appeal, the Appellants argue [2] that "the circuit court erred when it failed to consider

2. The Appellants' concise statement of the points of error is useless as a roadmap. Therein, the

Appellants merely argue that the circuit court erred in (1) granting in relevant part Arakaki's

evidence of Swift's fraudulent concealment of his wilful and illegal dumping of asbestos and other waste material on the property prior to, during, and after the sale of the property to [the Appellants] in denying [the] Appellants' motion for reconsideration":

> Swift ... failed to disclose his illegal landfill activity on the site involving asbestos containing debris.
>
> [The Appellants] did not know of the hazardous material being dumped on the Property until September of 2001.... Had [they] been privy to ... any illegal dumping and cover-up of ... hazardous material on the Property, [they] would not have gone through with the purchase nor ... agreed to settle....
>
> ....
>
> ... Even if [the Appellants] knew or should have known that there was illegal dumping of hazardous material on the Property, this does not negate Swift's obligation to disclose all material information affecting the marketability, condition, and value of the Property.
>
> ....
>
> ... Even though Carr is a developer, the doctrine of caveat emptor does not apply ... where there is active concealment of a harmful, hazardous substance of which the seller is aware.

(Emphases omitted.) Moreover, the Appellants contend, "Swift's fraud is imputed to Arakaki by ... assignment of the [second mortgage].... As much as Arakaki would simply like to be paid because he was the assignee of the promissory note, he became subject to the liabilities and defenses thereunder when he accepted the assignment."

Though the Appellants do not articulate exactly what relief they seek in this court—whether avoidance of the contract or a remand for reconsideration on the basis of newly discovered evidence—they conclude that "a mutual mistake as to the value and condition of the property existed at the time Arakaki settled [its] claims against [the Appellants], justifying rescission of the settlement agreement":

> Neither [the Appellants] nor Arakaki had any knowledge of Swift's illegal dumping. [All] were unaware that asbestos containing material was present on the Property .... [the Appellants] agreed to settle ... on the material assumption that the Property was ready for development.... [The Appellants] first found out about Swift's illegal actions ... in September 2001. This is new evidence that could not have been raised during the settlement negotiations between the parties in November 2000[nor] at the hearing on Arakaki's motion for summary judgment.... [The Appellants] conducted [their] due diligence of the Property and relied upon Swift's good faith as a fellow businessman and friend that the value and condition of the Property was suited for residential development.

(Emphasis and citation omitted.)

## B. *Arakaki's Arguments*

In its answering brief, Arakaki counters [3] that, "[a]s the non-moving part[ies], [SCD and Carr] ha[d] the burden of showing ... that a genuine issue of [material] fact exist[ed]," and that "[SCD's and Carr]'s statement of no position coupled with their non-appearance at the hearing constitute[d] a waiver of objections to the granting of ... summary judgment." (Citing *Cordeiro v. Burns*, 7 Haw.App. 463, 776 P.2d 411 (1989).)

Arakaki contends that the underlying contract between the parties merged into the settlement and that, " '[a]s a general rule, a properly executed settlement precludes future litigation for its parties.' " (Quoting

July 19, 2001 motion, (2) entering its October 4, 2001 order, and (3) denying the Appellants' motion for reconsideration. Inasmuch as any error(s) underlying an appealable ruling are usually not self-evident, a concise statement of points should not merely recite the documents appealed from, like a notice of appeal, but also foreshadow the brief's specific argument(s). *See* Hawai'i Rules of Appellate Procedure Rule 28(b)(4) and (7).

3. In addition to the responses presented *infra*, Arakaki argues that "the [circuit] court did not err in denying the motion for continuance of trial." (Emphases omitted.) Inasmuch as this point is unresponsive to the Appellants' opening brief, we do not address it.

*Amantiad v. Odum,* 90 Hawai'i 152, 161, 977 P.2d 160, 169 (1999).) Arakaki further notes that the language of the settlement shows the parties' agreement to bar any further claims in the present matter: "[A]bsent bad faith or fraud in the settlement agreement neither party ... may rescind the agreement. None of the alleged newly discovered evidence constitutes bad faith or fraud related to the Settlement Agreement and hence there can be no rescission of the Settlement Agreement." (Citing *Miller v. Manuel,* 9 Haw.App. 56, 828 P.2d 286 (1991).)

In addition, Arakaki asserts that the Appellants' motion for reconsideration did not meet the standard for newly discovered evidence warranting reconsideration:

> From 1995 through the present [SCD and Carr] owned the property, had control over the property and knew or should have known that Swift was continuing to access and work on the property....
>
> The deposition of Swift ... put [SCD and Carr] on notice more than 8 months before the settlement conference and 17 months before ... Arakaki's motion for summary judgment that the property was used as a landfill. The Geolabs report simply confirmed the landfill as did the Commissioner's report.
>
> ....
>
> [SCD and Carr] did not exercise due diligence in discovering the notices of violation and landfills. The notices were public records from 1995–1996.

(Capitalization altered.)

Finally, Arakaki argues that SCD and Carr failed to preserve any error(s) for appeal, inasmuch as their motion for reconsideration concerned only "alleged fraud in the underlying sale," not the settlement agreement. (Citing *Pele Def. Fund v. Paty,* 73 Haw. 578, 837 P.2d 1247 (1992).) In any case, Arakaki states, any mistake of fact about environmental conditions on the property "[wa]s not basic or material to the settlement agreement because the settlement agreement makes no mention or consideration of the development value[ ] or condition of the property."

## C. The Circuit Court Erred In Granting Summary Judgment.

We disagree with Arakaki's assertion that the Appellants waived their objections to the circuit court's grant of summary judgment by filing a statement of no position and failing to appear at the August 15, 2001 hearing. Absent a local rule to the contrary, a party need not affirmatively oppose a motion for summary judgment that fails to show *prima facie* (1) that the undisputed facts foreclose "genuine issue[ (s) ] as to any material fact[ (s) ] and [ (2) ] that the moving party is entitled to judgment as a matter of law." A non-movant's failure to oppose the facts averred by the movant may constitute admission *of those facts, Flynn v. Sandahl,* 58 F.3d 283, 288 (7th Cir.1995); *Saucier v. State Tax Assessor,* 745 A.2d 972, 974 (Me. 2000), but those facts must nonetheless establish that the movant is entitled to relief. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Amaker v. Foley,* 274 F.3d 677, 680–81 (2d Cir.2001) ("[E]ven when a nonmoving party chooses the perilous path of failing to submit a response ..., the [trial] court may not grant the motion [for summary judgment] without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."); *Peter v. Lincoln Tech. Inst.,* 255 F.Supp.2d 417, 426 (E.D.Pa.2002); *Andrews v. Tex. Park & Wildlife Dep't,* 196 F.Supp.2d 424, 426 (E.D.Tex.2001); *San Juan Star Co. v. Casiano Communications, Inc.,* 176 F.Supp.2d 110, 112 (D.P.R.2001); *Greater Ariz. Sav. & Loan Ass'n v. Tang,* 97 Ariz. 325, 400 P.2d 121, 123 (1965) ("If the papers of the moving party fail to show that he is entitled to judgment as a matter of law, the opposing party need not file an opposing affidavit."); *E.O. Dorsch Elec. Co. v. Plaza Constr. Co.,* 413 S.W.2d 167, 170 (Mo.1967) ("The failure of [the] plaintiff to ... present any proof in respect to the motion ... forces us to accept ... that there is no factual issue concerning the terms of the contracts attached to the motion.... However, this ... does not necessarily require [summary judgment]" where, as here, the "moving party may not have shown by 'unassailable proof' that as a

matter of law it was entitled thereto."); Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1190 & n. 17 (3d ed. 2004 & Supp.2005) (citing *Harriman v. Liberian Mar. Corp.*, 204 F.Supp. 205, 206 (D.Mass.1962) ("It is elementary that in either State or Federal practice a motion is not automatically allowed by the mere filing of an 'assent,' or a notation of 'no opposition' thereto, and it is a matter of daily experience that Courts frequently deny motions which have been assented to.")); *cf. Perez v. Tomberlin*, 86 Ariz. 66, 340 P.2d 982, 985 (1959) ("The supporting affidavits ... by [the defendants] ... were clearly strong enough to cast grave doubts upon the assertions found in [the] plaintiff's ... complaint. It was therefore necessary for [the plaintiff] to controvert this opposing evidence in order to preclude [summary judgment in the defendants' favor].").

Moreover, the relevant local rules do not compel this court or the circuit court to construe the Appellants' silence as waiver.[4] *Cf. Brydges v. Lewis*, 18 F.3d 651, 652, 653 & n. 1 (9th Cir.1994) (affirming summary judgment against plaintiff where local rule provided that "if the opposing party does not serve and file the required answering memoranda ... such noncompliance may be deemed a consent to the ... granting of the motion and the court may dispose of the motion summarily," and trial court had "warned [the plaintiff] that failure to respond ... 'shall constitute a consent on the part of [the plaintiff] to the granting of the defendants' motion' "); *Flynn*, 58 F.3d at 288 n. 2

(in *dicta* ) ("[P]ertinent local rules may more explicitly define the consequences of a non-movant's failure to respond....."). Even assuming, *arguendo*, that Arakaki's affidavits "supported" his July 19, 2001 motion pursuant to HRCP Rule 56(e) (concerning summary judgment)[5] such that SCD and Carr, by failing to oppose them, acquiesced in their presumptive truth, the burden remained upon Arakaki to show that it was "entitled to judgment as a matter of law," *see generally French v. Hawaii Pizza Hut*, 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004) (" 'Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts ... that present a genuine issue worthy of trial.' ") (emphasis omitted) (quoting *GECC Fin. Corp. v. Jaffarian*, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App. 1995)).

Notwithstanding Arakaki's citation of *Cordeiro*, the foregoing analysis is consonant with that opinion. In *Cordeiro*, the defendant State of Hawai'i had moved for summary judgment, proffering to the circuit court the deposition testimony of another defendant whose negligence, the State alleged, had been the sole legal cause of the death that resulted from the underlying traffic accident. 7 Haw.App. at 465, 467, 776 P.2d at 414–15. The non-movant plaintiff did not oppose the motion except to challenge the credibility of the deponent, claiming that his testimony "[wa]s 'self-serving' and conflict[ed] with statements he made to

---

4. In Hawaii's circuit courts, "[f]ailure to appear at the hearing *may* be deemed a waiver of objections to the granting of the motion," Rule of Circuit Courts 7(c) (emphasis added), but its October 4, 2001 order does not indicate that the circuit court granted summary judgment "by default" because of SCD's and/or Carr's failure to appear.

5. HRCP Rule 56 provides in relevant part:
   (a) ... A party seeking to recover upon a claim ... may move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.
   ....
   (c) ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
   ....
   (e) ... *When* a motion for summary judgment is made and *supported as provided in this rule*, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party.
   ....
   (Emphases added.)

**8**

the police on the date of the accident. [The plaintiff] therefore urge[d] that the credibility issue should have precluded summary judgment in this case." 7 Haw.App. at 469–70, 776 P.2d at 416. The Intermediate Court of Appeals disagreed, reasoning that

> a party opposing the motion for summary judgment must be able to point to some facts which refute the proof of the movant in some material portion and "not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." The non-moving party must come forward with some evidentiary matters to support its position. By failing to present any specific evidence of discrepancies or contradiction among [the deponent's] statements, [the nonmoving party] has failed to raise any genuine issue of material fact.

7 Haw.App. at 470, 776 P.2d at 416–17 (quoting *Costa v. Able Distribs., Inc.,* 3 Haw.App. 486, 489, 653 P.2d 101, 104 (1982)). Nevertheless, the ICA did not grant summary judgment in the State's favor "by default." Rather, it evaluated the sufficiency of the State's evidence, concluding that "there is no discrepancy or conflict between [the deponent's] testimony and the statement he gave to the police at the time of the accident." 7 Haw.App. at 471, 776 P.2d at 417.

In the present matter, Arakaki's motion for summary judgment and its affidavits did not present *any* evidence to rule out "genuine issue[ (s) of] material fact" as to the Appellants' possible default on the promissory note—*i.e.,* the subject of Civ. No. 99–2261—let alone enough to shift the burden of production to the Appellants. At most, Arakaki's motion tended to show that the Appellants breached their *settlement* agreement with Arakaki, but the evidence "supporting" the motion is inapposite to the claims set forth in the underlying suit. The settlement agreement does not purport to supplant the

mortgage, the promissory note it secured, or Arakaki's suit.

In sum, because the undisputed facts presented by Arakaki's motion are insufficient to obviate trial of the factual issues raised in the complaint, the circuit court erred in granting summary judgment.[6]

## IV. *CONCLUSION*

Accordingly, we vacate the circuit court's October 4, 2001 order and remand with instructions to (1) deny Arakaki's July 19, 2001 motion for summary judgment and (2) conduct further proceedings consistent with this opinion.

---

**6.** Insofar as Arakaki's goal was the Appellants' compliance with the settlement agreement, it could have filed a motion in the circuit court to enforce the settlement or a separate action for breach of contract. *See* David F. Herr *et al., Motion Practice* § 20.06[A] (4th ed. Supp.2005) ("Three available remedies ... are ... [a]n amendment or supplementation of the pleadings to allege the settlement agreement as an executory accord[,] ... a separate action for breach of the settlement agreement[, and a] motion to enforce settlement. The third remedy is the most common and is usually the most cost-effective.").